(35 Misc. Rep. 348.)

MORROW v. McMAHON et al.

(Supreme Court, Special Term, New York County. June, 1901.)

1. WILL—CONSTRUCTION—LAWFUL ISSUE.

Testator, having a living sister, E., and descendants of five deceased brothers and sisters, gave a third of his income of his residuary estate to his wife for life; the remaining two-thirds to be divided, one-sixth to E., and the remaining five-sixths to the "lawful issue" of such deceased brothers and sisters. On the death of E. and such lawful issue the share of the income of the person dying was to be divided among the remaining beneficiaries. The trust in favor of his wife was to cease on her death, and the residue was to be divided between E., if living, and the "lawful issue" of his brothers and sisters then living, their heirs and assigns. On the death of E. before the termination of the trust, her share was to be divided among the other beneficiaries. *Held*, that by "lawful issue," in the provision as to income, the testator meant children, and in the provision as to the corpus of the estate he meant descendants.

2. SAME.

There is no inconsistency in construing the same word in different senses in the same will.

3. SAME—ESTATE ACQUIRED.

Under such will a present estate, defeasible by death before the termination of the trust, was vested in the issue of the deceased brothers and sisters.

4. DEATH—PRESUMPTION.

A husband left his family in 1873 to better his condition. He wrote to his wife frequently until 1876, when he stated that he was in a hospital, very ill, and did not expect to recover. He was never heard from thereafter. *Held*, that he would be presumed to have died seven years after 1876.

Action by Samuel Morrow against Mary McMahon and others to construe a will. Judgment rendered.

W. H. Osborne, for plaintiff.

F. V. Dobbins and Joseph Garrison, for defendants.

GILDERSLEEVE, J. The object of this suit is to procure a judicial construction of the will of William McMahon, and an accounting by the trustees of the income derived from the estate. The testator died in October, 1898, leaving a will, which has been admitted to probate, and by which, after certain bequests, he gave the rest of his estate to his executors, in trust, to receive the income thereof during the life of his wife, Mary McMahon, and apply

71 N.Y.S.—61

the net income as follows:  To pay one-third thereof to his widow
for her life, divide the remaining two-thirds into six equal parts,
and pay one-sixth thereof to his sister Eliza Thompson, and one-
sixth to the "lawful issue" of each of his deceased brothers, John
and Samuel, and his deceased sisters, Ann Morrow, Maggie England,
and Caroline May, per stirpes.  In case of the death of the testa-
tor's sister Eliza, or of all the lawful issue of any of his deceased
brothers and sisters above named, the share of the person or per-
sons so dying was to become a part of the net income, and be di-
vided among all the remaining beneficiaries of the will, viz. Eliza
and the lawful issue of his deceased brothers and sisters, in the
same proportions.  Upon the death of the testator's wife, the trust
was to cease, and he then gave and devised all the residue of his
estate to his sister Eliza, if then living, and to the "lawful issue"
of his deceased brothers and sisters above named, then living, per
stirpes, "their heirs and assigns, forever."  In case his sister Eliza
should die before the termination of the trust, her share was to
be divided among the surviving beneficiaries, the same as named
above, in like proportions as the principal devise, and the testator
so gave and devised the same.  In case of the death of all the issue
of any of the testator's deceased brothers and sisters above named
before the termination of the trust, the share which such issue
would have taken was to be divided among the surviving benefi-
ciaries in like proportions as the principal devise, and he so gave
and devised the same.  This states the substance of the will in
question.  The testator's widow is still living.  His sister Eliza
Thompson died before the testator, though on the same day.  So
that, all the other brothers and sisters of the testator having died
before he made his will, there were left at his death only the chil-
dren of his brothers and sisters and their descendants.  The plain-
tiff is the son of James Morrow and the grandson of Ann Morrow,
a sister of the testator.  He claims that his father is dead; that
he is of the "lawful issue" of the testator's sister Ann Morrow, and
therefore entitled to share in the income of the estate now, and
at the death of the testator's widow in the residue of the estate,
if he shall then be living.  The claim that James Morrow, plaintiff's
father, is dead, rests, not on proof of his actual death, but on the
presumption of his death arising from the fact that he has not
been heard of or from since the year 1876.  The evidence shows
that James Morrow was born about the year 1850, and married
plaintiff's mother February 2, 1872, and that on November 12, 1872,
nine months after the marriage, he went to Illinois, with the avowed
purpose of seeking employment and making a home for his wife.
At that time his wife was with child by him, and on May 20, 1873,
gave birth to the plaintiff.  Before James Morrow left his wife
he lived with her in peace and love, and was on friendly terms with
his relations.  When he left his wife, November 12, 1872, their part-
ing was affectionate, and he wrote to her weekly for three years.
Then ensued an interval of a year during which his letters ceased.
In 1876 Morrow wrote to his wife, stating that he was then in a
hospital in Texas, had been there six months, never expected to

leave it, and asked her forgiveness for past wrongs. Before his departure from Newark, N. J., where he lived after his marriage, he was afflicted with inflammatory rheumatism. He is not shown to have died, but after further efforts, by means of correspondence, to ascertain whether he was alive or dead, his family and relatives have not heard of or from him since 1876,—a period of 24 years. Considering that Morrow was, as testified on the trial, of a restless disposition and roving habit of life, and probably adventurous in spirit; that he was a victim of inflammatory rheumatism; that he lived happily with his wife, and parted with her in a loving manner, with the purpose of bettering his situation in life for himself, his wife, and his expected child; that he continued to correspond with his wife for three years, writing her every week,—the evidence, in the absence of any countervailing testimony, leaves the impression on my mind that the man is dead. Another influential fact in the case is that Morrow left his wife enciente with his and her first child; and this circumstance, always full of interest to parents, must be allowed great weight, in a case like this, in determining whether the absent father is alive or not. For, on the hypothesis that he is living, after 24 years of silence and continued absence, his conduct towards his wife and child can be accounted for only by assuming that he is destitute of natural affection for his offspring, however indifferent he might feel towards his wife. This argues a condition of mind and heart which happily is found only in natures from which the highest instincts of our humanity have been obliterated. The law presumes better things of men, and the plaintiff is entitled to whatever benefit the humane presumptions of the law in favor of the existence of goodness, rather than evil, in men, affords him. Of course, in every case of this kind the question here presented must be determined largely on its peculiar facts and circumstances. I therefore conclude that James Morrow is dead, and that, in accordance with the legal presumption, he died seven years after he was last heard from, in the year 1876.

The next question to be considered is whether the word "issue," in the fourth clause of the will, disposing of the income of the estate, was used by the testator in the sense of descendants ad infinitum, or in the sense of children, and therefore limited to the children of the testator's deceased brothers and sisters. The primary meaning of "issue" is descendants to the latest generation. But, where the testator appears to have used it in a restricted sense, it will be held to mean children. I think that, as applied to the income, it was used by the testator in the sense of children, meaning thereby the immediate children of his brothers and sisters who were living at the time of his death, when the will became operative. The scheme of that part of the will seems to have been to provide for those children only. All the testator's brothers and sisters had died before he made his will, and the children they left were presumably known to him. And, having no children of his own to provide for, he was probably interested in them and their present welfare during the life of his wife. The testator's sister

Eliza having died before his death, the provisions of the will regarding the disposition of the income may be stated thus: The testator gave the income to the "lawful issue" of his brothers and sisters, and directed that, if all the "lawful issue" of any brother or sister should die, their share should go to the remaining beneficiaries. Now, bearing in mind the familiar principle that, as respects the persons who were to share in the distribution of the income during the life of the testator's wife, the will speaks as of the time of the testator's death, and that they were to be ascertained then, if for "lawful issue" we read "children," the fourth clause is consistent and free from difficulty; for the testator might reasonably have contemplated the possibility that all the children of some of his brothers and sisters would die before his decease, and he would naturally direct that the share of those so dying should go to the surviving children. But, on the assumption that the words "lawful issue" were used in their technical sense, as meaning the descendants of the testator's brothers and sisters, we are met by this difficulty, namely: Having given the income of his estate to the "lawful issue" of his brothers and sisters, and directed that if all the "lawful issue" (that is, their descendants, lineal and collateral, to the remotest degree) should die (in other words, become extinct) during his life, their share should go to the "lawful issue" or descendants surviving them, he must have contemplated the possible failure of all such issue before his own death. This would be wholly at variance with all human calculations respecting the duration of life, and too unreasonable, therefore, to be accepted as the probable intention of the testator. If it be said that the testator had in mind the possibility of the death of all the "lawful issue" of any one brother or sister, only, the answer is that, if he could reasonably contemplate the death of all the issue of one brother or sister, he could as reasonably and naturally have contemplated the death of all the "lawful issue" of all his brothers and sisters. Indeed, by reasonable construction, the expression "lawful issue" of any brother or sister would include all the "lawful issue" of all his brothers and sisters. That the testator entertained a possibility so utterly remote and unreasonable is incredible. I think it beyond all question that the testator intended to confine the benefit of the income to those children of his brothers and sisters who should be alive at the time of his death, and the survivors of them, up to the death of his wife, per stirpes. The testator's sister Eliza predeceased him, and the proviso thus became operative. Besides, there being no word of gift, and only a direction to pay, the bequest was to a class which was to be ascertained at the time of the testator's death, and they must be the children of his brothers and sisters then living. In re Allen, 151 N. Y. 243, 45 N. E. 554; In re Brown, 154 N. Y. 313, 48 N. E. 537.

The fifth clause of the will presents another and a different question. The will, as respects the final disposition of the residue of the estate, must be construed, as regards the words "lawful issue," in the primary sense of issue, as including all descendants of the

testator's brothers and sisters, indefinitely. The testator's wife being then dead, and he having no children, it must be assumed that he intended to make a final and complete disposition of his entire estate; and having in mind the possible death during the life of his widow of some of the immediate children of his deceased brothers and sisters, leaving issue, he would naturally provide for that contingency, by giving his estate the direction which it would take if he should die intestate, viz. go to his heirs at law, the descendants of his brothers and sisters. Hence he used the words "lawful issue" in their larger and technical sense, and, to give emphasis to his intention, he added the words "heirs and assigns," which are not used in connection with his disposition of the income of the estate, and which, I think, should be construed to include the descendants of the nephews and nieces of the testator. 2 Redf. Wills, p. 65; Lemacks v. Glover, 1 Rich. Eq. 141. There is no inconsistency in interpreting the same word in the same will in different senses. 2 Redf. Wills, p. 65, § 18, note 29. This construction on the will prevents the disinheritance of the testator's heirs at law, which it is the policy of the law to avoid, when possible without doing violence to the manifest intent of the testator (Hersee v. Simpson, 154 N. Y. 496, 48 N. E. 890), and is the one which I think expresses the mind of the testator as gathered from the whole will. The disposition of the residue of the estate, being accompanied with apt words of gift and devise, gave the beneficiaries a vested and not a contingent interest. The rule of law is that the court will always so construe a devise, where it can be done consistently with the intention of the testator. In re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401; Hersee v. Simpson, supra.

It must be held, therefore, that the devise of the residue of the estate vested in the issue of the deceased brothers and sisters of the testator a present estate defeasible by their death before the termination of the trust.

This seems to be a case which the court should entertain, and direct an accounting by the trustees to be taken therein. Wager v. Wager, 89 N. Y. 161; Mellen v. Mellen, 139 N. Y. 210, 34 N. E. 925.

Let findings and judgment in accordance with these views be submitted for settlement on notice.

Judgment accordingly.