(No. 17302.—Reversed and remanded.)
CHARLES S. EASTON, Appellant, *vs.* CHARLES H. HALL,
*et al.* Appellees.

*Opinion filed June 16, 1926—Rehearing denied December 15, 1926.*

1. WILLS—*statement and application of rule against perpetuities.* The rule against perpetuities is that no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest, and if the interest may possibly vest after said time the rule applies and renders the devise void, even though the situation is highly improbable.

2. SAME—*when devise in trust violates rule against perpetuities.* Where a testatrix devises her property to trustees, providing annuities out of the income and postponing the final distribution and vesting of her estate until after the death of all the beneficiaries of the annuities, the devise violates the rule against perpetuities where one of said beneficiaries is not or may not be in being, being referred to in the will as any widow a certain named beneficiary might leave surviving, and the entire provision for the ultimate distributees, whose interests under the terms of the will can not vest until the time of distribution, must be held void, there being no express provision for an alternative contingency which may be held valid.

3. SAME—*vested interests are not subject to rule against perpetuities.* As the rule against perpetuities is directed only against remoteness in the creation of future interests, an estate which vests within the time limited by the rule is good though it continues beyond that time, and a limitation of an estate in fee to a person in being will be valid though by the same will a prior estate for life is limited to another, with remainder for life to his children.

4. SAME—*when happening of an event within period of rule against perpetuities does not preclude its application.* The fact that one contingency must happen within the time required by the rule against perpetuities does not render the limitation over valid where an alternative contingency may not happen within the period of the rule, unless the donor or testator expressly so provides.

5. SAME—*when gifts to charity are not exempt from application of rule against perpetuities.* The immediate, unconditional devotion of a fund to charity, and not the time or manner of its application or administration, is the test of the validity of its creation; and a gift to charity is not exempt from the application of

the rule against perpetuities, whether or not the charity is in existence, where the ultimate devotion of the fund to the charitable use must await the termination of a prior gift the duration of which violates the rule, and where the interest of the charity is by the express terms of the gift not to vest until the end of said period.

6. Same—*intention must be considered in determining vesting of an interest.* All rules as to the vesting of estates are subject to the rule of first importance in the construction of wills that the intention of the testator or testatrix as expressed in the will must govern, and while the law favors the vesting of estates at the earliest possible moment, yet where, from a consideration of the language of the entire will, it is clear that the testator intended to postpone the vesting of the estate until the period of distribution that intention will be carried out.

7. Same—*when trustees take estate in fee simple.* Where a testatrix devises all her residuary property to trustees for purposes of the trust as expressed in the will, gives them the management and control of the property with extensive powers, and authorizes them to do all things necessary for the advantageous management of the estate with full effect the same as she could do if living and eventually to convert it into cash and distribute the proceeds, the trustees take the estate in fee simple.

8. Same—*same word in will may have different meanings, according to context.* The same word, when used twice in a will, may be given different meanings according to the context and subject matter, especially where to give it the same meaning will require rejection of other words in one part of the context.

9. Same—*when gifts to charities violate rule against perpetuities.* Where a testatrix devises her property in trust for the payment of certain annuities for a period which may possibly extend beyond the time allowed by the rule against perpetuities, a provision for final distribution to a mission and a church organization, although said charities are in existence, must be held void where the testatrix expressly provides that "no title or interest in any of the several trust funds in my will created, or in the money or other property composing them, or in the income accruing therefrom, or any of its accumulations, shall vest in any beneficiary" during the continuance of the trust, as the word "beneficiary" must include the charities as well as the beneficiaries of the annuities.

10. Same—*general rule as to effect of invalid provisions in will.* Valid provisions in a will will be upheld if they can be separated from those which are invalid and given effect without doing violence to the intention of the testator or testatrix, but if the will constitutes one entire testamentary scheme and the valid and in-

valid provisions are so related and dependent upon one another that to sustain the valid provisions while the invalid fail will do violence to the intention or produce manifest injustice, then all alike must be decreed invalid.

11. SAME—*when violation of rule against perpetuities does not defeat entire trust.* Where a testatrix devises her estate in trust for the payment of certain annuities out of the income therefrom but expressly postpones the vesting in the final distributees until the death of all the beneficiaries, one of whom is not in existence, the ultimate gifts to the final distributees must be held void as violating the rule against perpetuities; but the invalidity of such provision cannot be held to defeat the entire trust and thereby defeat the testatrix's manifest intention of providing, in any event, for the beneficiaries of the annuities as set forth in her will by valid separable provisions.

12. SAME—*necessity for spendthrift trust created by will can not be inquired into.* Where the language used in a will is sufficient to create a spendthrift trust, no inquiry can be made whether or not the person for whose use it was created was, in fact, a spendthrift.

13. PARTIES—*when the doctrine of representation applies.* The doctrine of representation is especially applicable where the persons who are not before the court are only possible parties not in being and where the interest of all parties requires a decree which will completely and finally dispose of all the subject matter of the litigation, as where contingent interests in reversion or remainder are held by persons not in being or unascertained, and there are persons before the court who have the same interest and are certain to bring forward the entire merits of the question so as to give the contingent interests effective protection.

14. SAME—*when unknown beneficiary is represented by trustees.* While unborn persons cannot be made parties to litigation or their contingent interests bound by the result of litigation to which they were not parties and in which they were not represented, yet where such interest is a mere expectancy in a trust estate and the holder is an unknown beneficiary who may not yet be in existence, such party may be represented by the trustees, in whom is the legal title and on whom the duty is imposed to protect and preserve the interest for whomsoever shall be ultimately entitled to it.

15. SAME—*attorney conducting suit is bound by decree without being made a party.* An attorney who advises, directs and prosecutes a suit to determine interests in an estate, although he is not

a party to the record, is bound by the decree, and he is not a necessary party although he is grantee in a deed from one of the parties conveying him an interest in the estate.

STONE, C. J., and HEARD, J., dissenting.

APPEAL from the Circuit Court of Peoria county; the Hon. FRANK LINDLEY, Judge, presiding.

SHELTON F. McGRATH, GEORGE W. HUNT, and COOKE, SULLIVAN & RICKS, (GEORGE A. COOKE, and EDWARD H. FIEDLER, of counsel,) for appellant.

JACK, IRWIN & JACK, for appellee the Women's Christian Home Mission; C. E. McNEMAR, for appellee the Universalist Church of Peoria; DAILEY, McCORMICK & RADLEY, for appellee Eleanor R. Easton; ALLEN & CONVERSE, and CLARENCE W. HEYL, guardian *ad litem,* for other appellees.

JOHN M. ELLIOTT, BRUCE E. DWINELL, and WINSTON, STRAWN & SHAW, (JAMES H. CARTWRIGHT, of counsel,) for Charles H. Hall and Frank T. Miller, executors and trustees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Charles S. Easton, the son and only heir of Sarah D. Easton, filed a bill in the circuit court of Peoria county for the construction of his mother's will, alleging that various parts of the will were invalid because they were in violation of the rule against perpetuities, and praying that the invalid provisions be decreed to be of no effect and that the fee simple title of all the property of the testatrix affected by them be decreed to be in the complainant, as the sole heir of the testatrix. A decree was entered finding that some of the provisions of the will violated the rule against perpetuities and were void and that others of the provisions attacked by the bill were valid. Separate appeals were per-

fected by the complainant and by the executors and trustees under the will, and cross-errors have been assigned by several of the beneficiaries. The appeals have been submitted together on one record, and in this opinion the term "appellant" refers to the complainant and the term "appellees" to all other parties.

The will was executed on October 30, 1919, and the testatrix died on December 24, 1924, at the age of seventy-seven years. The will in its first and second paragraphs revoked all former wills and directed the payment of the testatrix's debts. The fourth paragraph made a bequest of $5000 to her brother Charles H. Hall. The fifth paragraph directed $5000 to be invested in safe interest-bearing securities and the net interest or income therefrom to be paid to the testatrix's brother George S. Hall quarterly, and if, after he was incapacitated from working or earning a salary, his needs required more than the net income from the fund of $5000, the use of so much of the principal as his immediate needs might require from time to time was authorized, and at his death whatever should remain of the fund was directed to be paid to Jessie E. Hall Furst and Edward F. Hall, the children of George S. Hall. The sixth paragraph made bequests of $100 to a niece, Jessie E. Hall Furst, and $500 to a nephew, Edward F. Hall. These paragraphs were not questioned and were held valid.

Paragraphs 3, 7, 9, 14 and 15, are as follows:

"(3) I hereby give, bequeath, bequest and devise unto my brother Charles H. Hall and Mr. Frank T. Miller, both of Peoria, Illinois, as trustees, for the uses and purposes following, and with the same powers in connection therewith, as are hereinafter given them in connection with the trust established for the payment of certain annuities to my son and others, the sum of twenty thousand dollars ($20,000). The purposes of the said trust, are as follows: To invest the same in safe interest-bearing securities, and after the payment of all taxes and assessments thereon and

323-26

any expenses connected therewith to pay over quarterly all the net interest, profit and income therefrom to my sister Ella B. Hall during her natural life, and upon the death of said Ella B. Hall to return the principal of said fund of twenty thousand dollars ($20,000) to the same trust fund hereinafter created for the payment of certain annuities."

"(7) All of the rest, residue and remainder of my estate, real, personal and mixed, wheresoever found or located, of which I die seized or possessed, or which may come to my estate in any manner after my death, I give, devise and bequeath unto my brother Charles H. Hall and Mr. Frank T. Miller, both of Peoria, Illinois, as trustees, for the uses and purposes and with powers following, to-wit:

"For the purpose of paying out of said trust estate and income therefrom an annuity (a) to my said son Charles S. Easton of not less than thirty-six hundred dollars ($3600) and not more than six thousand dollars ($6000) annually, as hereinafter provided, said annuities to be paid in monthly installments. Said annuities shall be paid primarily out of the net income of the profit herein bequeathed and devised, and in the event such net income is at any time less than said annuity to my said son Charles and to Eleanor R. Easton, widow of my son George B. Easton, as hereinafter provided, then my said trustees may be, and they are hereby, authorized to sell so much of the *corpus* of my estate as may be necessary to prevent said monthly payments falling below the sum of five hundred and fifty dollars ($550); provided, however, that if the net income from my estate, and in the hands of such trustees, is in excess of the amount to be paid monthly, then any such excess may be from time to time paid to my said son Charles S. Easton; provided further, however, that no monthly payment to him at any time shall exceed five hundred dollars ($500).

"(b) My said trustees shall pay to Eleanor R. Easton, widow of my son George B. Easton, deceased, so long as she does not re-marry, the sum of three thousand dollars

($3000) annually, payable in equal monthly installments of two hundred and fifty dollars ($250) each.

"(c) In case of the death of my said son Charles S. Easton leaving him surviving no children, but leaving him surviving a widow, then it is my desire that the sum of three thousand dollars ($3000) annually, payable in monthly installments of two hundred and fifty dollars ($250) each, shall be paid to said widow as long as she shall not remarry; my intention being to provide an income for the widow of each of my said sons as long as they do not remarry, and upon the re-marriage of either of them said annuities as to such shall cease and determine, and upon the re-marriage of the remaining one, the said annuity as to her shall determine, and thereupon said trust shall end."

"(9) I direct that no title or interest in any of the several trust funds in my will created, or in the money or other property composing them, or in the income accruing therefrom, or any of its accumulations, shall vest in any beneficiary under any such trust during the continuance of this trust, nor shall any beneficiary acquire any right in or title to any installments or installment of income other than by and through the actual payment of each installment, respectively, by the trustees of the respective trust estates to such beneficiary in person only, nor shall any beneficiary have any right or power, by draft, assignment or otherwise, to anticipate, to pledge or mortgage, or in anywise encumber or assign in advance any installment or installments of income, nor to give any orders in advance upon the trustees for any installments, nor shall any of the same be subject at any time to any judgment, execution, attachment, levy or to any proceeding whatsoever."

"(14) I direct that the provision of the will of my late husband, Edward S. Easton, creating a trust to provide for annuities to my son Charles S. Easton and his former wife, Jennie F. Easton, shall be continued and carried out by my said trustees during the lives of said Charles S. Easton

and Jennie F. Easton; and all powers herein conferred on such trustees are extended to cover this trust.

"(15) Upon the death of all the beneficiaries of the trust established by me herein, all of said estate shall by my said trustees be converted into cash, and said entire trust estate shall thereafter be by my said trustees divided as follows:

"One-sixth (⅙) thereof to the Women's Christian Home Mission, commonly known as Home of the Friendless, of Peoria, Illinois, the same to be used to carry out the purposes for which said institution was established.

"One-sixth (⅙) thereof to the First Universalist Church of Peoria, Illinois, as a permanent fund, and to be known as the Easton Fund, the net profits of which shall be used for the general church purposes. I make this bequest in memory of my grandfather, Dennis Blakeley, who was instrumental in organizing the first Sunday School and the first church organization of this church.

"The remaining two-thirds (⅔) of my residuary estate shall go to my heirs-at-law then living, in accordance with the laws of the State of Illinois for the succession of property."

Paragraph 8 confers power upon the trustees in the administration of the trust; paragraph 10 provides for the appointment of their successors; paragraph 11 for the filing of a bond; paragraph 12 nominates the testatrix's brother Charles H. Hall and Frank T. Miller executors and trustees, and paragraph 13 provides for their compensation.

The provision of the will of the testatrix's husband, Edward S. Easton, creating a trust to provide for annuities for Charles S. Easton and his former wife, Jennie F. Easton, is as follows:

"*Third*—I give and bequeath to my executors hereinafter named, to be continued after the settlement of my estate in the probate court, as trustees under this will, the sum of $20,000 in trust for the following uses and purposes:

"To invest the same in good, safe, interest-bearing securities, and after the payment of all taxes and assessments thereon and any expenses connected therewith, to pay over in quarterly payments, all the net interest, profit and income therefrom, in cash, into the hands of my son, Charles S. Easton, in person, and into the hands of Jennie F. Easton, wife of my said son, in person, jointly, during their joint lives, upon their joint receipt, and upon the death of either of them then to pay said net interest, profit and income therefrom, in cash, into the hands of the survivor of them, in person, during the life of such survivor, and no payment of such net interest, profit or income shall ever be made by my said trustees upon any written or verbal order nor upon any assignment or transfer thereof, nor upon any execution, garnishment, attachment or creditor's bill brought by any creditor of said Charles S. Easton and Jennie F. Easton, his wife, or either of them, or the survivor of them, and at the decease of the survivor of them, said trust fund of $20,000 shall then vest in the heirs of the body of my said son, Charles S. Easton, and in default of such heirs of the body of my said son, Charles S. Easton, and in default of such heirs of his body then living, the same shall fall into the general residuary clause of this my last will and testament.

"*Lastly*—I hereby nominate and appoint my wife, Sarah D. Easton, my wife's brother, Charles H. Hall, and Dan F. Raum, executors of this my last will and testament, and I hereby declare that after the settlement of my estate in the probate court as required by law, they and the survivors of them shall continue as trustees of the fund of $20,000 mentioned in the third clause of this will, with full power and authority to have possession of, manage, control, invest, sell, convey and re-invest said trust fund as they or their successors in trust may deem advisable, and my said executors and trustees shall not be required to give bond as such so

long as my wife shall live and be one of the executors and trustees under this will, except as my wife may otherwise determine.

"In case of the death of my said trustees or any of them, 'the probate court of Peoria county on certificate to it of such fact of death shall appoint a successor or successors in trust with all powers conferred by this will."

The estate of the testatrix consisted of real estate worth about $200,000 and personal property worth about $100,000. The net income of the estate for five years before the testatrix's death was shown to have been on an average about $10,000.

Charles S. Easton at the time of the testatrix's death was fifty-nine years old, her sister, Ella B. Hall, seventy-four years, and her brothers, Charles H. Hall and George S. Hall, seventy-one and seventy years, respectively. George S. Hall's two children named in paragraphs 5 and 6 of the will are in the neighborhood of forty years old and each has two children. The testatrix had another son, George B. Easton, who died on July 19, 1919, without ever having had any child, and left a widow, Eleanor R. Easton, surviving him, who is one of the beneficiaries named in the will, is still his widow and is thirty-nine or forty years of age. Charles S. Easton was first married to Jennie F. Smith, who obtained a divorce from him in 1914 and is still living. He was married in 1915 to Della W. Pratt, who is living and is forty-four years old.

The First Universalist Church of Peoria is a corporation of Illinois, not for pecuniary profit, organized for religious and educational purposes, which conducts church services on Sunday and under whose auspices public lectures are given on subjects of general interest by men of national and international reputation to which the general public is admitted free, the expenses being paid by voluntary contribution from citizens of Peoria. The testatrix during her lifetime attended this church, of which she was a member

and one of the workers interested in its progress. Her parents had been members of the church, as was her grandfather, Dennis Blakeley, who was instrumental in organizing the first Sunday School and the first church organization. The Women's Christian Home Mission is also a corporation organized not for pecuniary profit. It supports a home known as the Home for the Friendless, for the support of orphans or friendless children. They have places for ninety-four children, and for a number of years the home has been filled and it always has a waiting list. Mrs. Easton was one of the charter members of this society and a member of the first board of directors. She was made an honorary member when she left Peoria, about 1902, and continued to be an honorary member until the time of her death. She returned to Peoria from time to time and always visited and took an interest in the Home for the Friendless and sent gifts from California to the children.

By paragraph 7 of her will the testatrix attempted to create a trust consisting of all the residue of her estate after the specific provisions made by the other paragraphs, for the purpose of keeping the estate invested and paying out the income in monthly installments: (1) To Charles S. Easton not less than $3600 nor more than $6000 annually; (2) to Eleanor R. Easton, the widow of the testatrix's son George, $3000 annually so long as she does not re-marry; (3) in case of the death of Charles S. Easton leaving no children surviving him but leaving a widow, to pay to such widow $3000 annually so long as she does not re-marry. Paragraph 3 creates a trust fund of $20,000, the income from which is to be paid to the testatrix's sister, Ella B. Hall, during her life. At her death the principal is to become a part of the trust fund created by paragraph 7. Paragraph 15 provides that upon the death of all the beneficiaries of the trust all the estate shall be converted into cash by the trustees and thereafter divided by them, one-sixth to the Women's Christian Home Mission, one-sixth to the

First Universalist Church of Peoria, and the remaining two-thirds to the testatrix's heirs-at-law then living. These two paragraphs, 7 and 15, provide for the final disposition of the estate, and the time fixed for such final disposition is the death of all the beneficiaries of the trust. About these propositions there is no dispute between counsel.

The rule against perpetuities is, "that no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." (Gray's Rule Against Perpetuities, sec. 201.) If the provisions of a will are such that under them a violation of the rule against perpetuities may possibly happen, then the devise of interests dependent upon such provisions is void. The time fixed by this will for the distribution of the funds of the trust and its payment to the ultimate takers of the property of the estate was at the death of the last survivor of the beneficiaries of the trust for whom annuities were provided. If that time may possibly be more than twenty-one years after the death of the testatrix it is too remote for the gift over to be valid. All such annuitants are persons in being except the possible widow of Charles S. Easton. Paragraph 7, in making provision for a widow of Charles S. Easton, does not refer to his present wife but to the wife who may be living at the time of his death and will then be his widow. Such widow may be a woman born after the death of the testatrix and may live more than twenty-one years, so that the limitation to take effect after her death is void because the contingency on which it depends may not occur within the time prescribed by the rule. The improbability of its occurrence after the prescribed time is immaterial. If it can possibly happen after that time an interest conditioned upon it is too remote. (Gray's Rule Against Perpetuities, sec. 214; Tiffany on Real Prop. sec. 180.) The typical instance mentioned by both these authors is a devise to one for life, remainder to his widow for life, with remainder over on the death of the

widow. (*Hodson* v. *Ball,* 14 Sim. 558; *Sears* v. *Russell,* 8 Gray, 86; *Gray* v. *Whittemore,* 192 Mass. 367; *Stone* v. *Nicholson,* 27 Gratt. 1.) A vested interest is not subject to the rule, which is directed only against remoteness in the creation of future interests, and an estate which vests within the time limited by the rule is good though it continues beyond that time. A limitation of an estate in fee to a person in being will be valid though by the same will a prior estate for life is limited to another, with remainder for life to his children. (*Madison* v. *Larmon,* 170 Ill. 65; *Brown* v. *Brown,* 247 id. 528; *Otis* v. *McLellan,* 95 Mass. 339; Gray's Rule Against Perpetuities, sec. 209; Tiffany on Real Prop. sec. 183.) Tested by these rules the bequest of two-thirds of the residue of the testatrix's estate to her heirs living at the time fixed by the will for the distribution of the proceeds of her estate falls clearly within the rule, for the persons who will be such heirs cannot be known until the time of distribution arrives, and their interest is therefore contingent and may not vest until after the time prescribed by the rule.

The argument is advanced, however, that the ultimate distribution of the proceeds of the estate is to be made upon one of the several contingencies,—of the death of Charles S. Easton either leaving children or leaving no children and no widow, or the death of his widow, if he leaves a widow and no children,—and that these are contingencies which the testatrix has separated by her will. The limitation of the distribution of the estate upon the death of Charles S. Easton under any conditions would be valid, for his was a life in being at the time the will took effect. The limitation upon the death of the widow of Charles S. Easton would be invalid because the widow may possibly be a person who was not in being at the time the will took effect and her death may possibly occur more than twenty-one years after that time and more than twenty-one years after the lives of all the persons named in the will who were in being in

the testatrix's lifetime and to whom payments were directed to be made for their respective lives. The limitation in the will is upon the death of all the beneficiaries of the trust, and this includes the widow of Charles S. Easton. If there should be no such widow the event upon which the testatrix has made the ultimate distribution of the estate to depend would occur within the time required by the rule, but in the alternative event of a widow and no children surviving Charles S. Easton the event upon which the ultimate gift depends might not occur within the prescribed time.

Such case of the limitation of a future estate upon a contingency which may be too remote under the rule against perpetuities but yet may happen within the time prescribed by the rule is discussed by Professor Gray in chapter 9 of his treatise on the rule against perpetuities, where many cases are considered. He says (sec. 331): "A gift conditioned on such contingency may be put into one of two classes, according as the contingency happens or does not happen within those limits; but unless this division into classes is made by the donor the law will not make it for him, and the gift will be bad altogether. Thus, if land is devised to A and his heirs, with a gift over on the tenant for the time being changing the family name, such gift might be divided into two: one, a gift if A or any of his heirs born in the lifetime of the testator should change the name; and the other, a gift if any of the heirs of A not born in the lifetime of the testator should change the name. The former gift would be good, the latter bad. The testator might have separated the gifts, but as he has not, A's estate is indefeasible."

In Tiffany on Real Property (sec. 186) the same rule is stated that a gift vesting an estate upon an event which may occur beyond the legal period will not be separated by the court into two gifts, one in case the event occurs within the period and the other in case it occurs afterward, and

upheld as to the former. The happening of the event within the time required by the rule does not render the limitation over valid unless the donor or testator expressly so provides. This rule declared in many cases was again announced and followed in *Post* v. *Rohrbach,* 142 Ill. 600, and was recognized and applied in *Quinlan* v. *Wickman,* 233 Ill. 39, and *Moroney* v. *Haas,* 277 id. 467. In both of the latter two cases the testatrix created a trust, in the first case for the benefit of her daughter for life and upon her death for her child or children until the age of thirty years, and then to the child or children absolutely, with a gift over in case of the death of the daughter without leaving a child, or in case all the children surviving her should die before arriving at the age of thirty years. In the second case the trust was for the benefit of the testatrix's niece for life and upon her death for the benefit of her children surviving her until the youngest child should arrive at the age of twenty-five years and then to the children, share and share alike, with a gift over in case no child or issue should survive her, or in case no surviving child should attain the age of twenty-five years and all should die without issue. In each of these cases the testatrix expressly separated the gifts over into two gifts: one upon death without issue surviving, the other upon the failure of issue to reach the designated age, which was beyond the time fixed by the rule against perpetuities; and it was held that the limitation based upon the second contingency was void, but that the first contingency was bound to occur, if at all, upon the death of the first taker, and the limitation based upon it was valid. There is no such separation of gifts in the will here in question, and this is not, therefore, a case of a limitation to arise upon alternative events.

The strictness of the rule which requires the separation of the gifts upon the alternative contingencies to be expressed by the testator is illustrated by the cases of *Proctor* v. *Bishop of Bath and Wells,* 2 H. Bl. 358, and *Miles* v. *Har-*

*ford,* 12 Ch. D. 691. In the latter case Sir George Jessel, Master of the Rolls, said: "As I understand the rule of law it is a question of expression. If you have an expression giving over an estate on one event and that event will include another event which itself would be within the limits of perpetuities, or, as I say, the rule against perpetuities, you cannot split the expression so as to say if the event occurs which is within the limit the estate shall go over, although if that event does not occur the gift over is void for remoteness. In other words, you are bound to take the expression as you find it, and if, giving the proper interpretation to that expression, the event may transgress the limit, then the gift over is void."

The appellees place great reliance upon the case of *Brown* v. *Wright,* 194 Mass. 540, which they say is on all-fours with the present case and is indistinguishable from it. The gift over in that case was to the testator's right heirs-at-law upon the death of his son George P. Wright without issue, but subject to a life estate to his widow and children if he should die leaving a widow and children surviving him. The will, after giving to the testator's son George the income of $10,000 for his life, provided "should he die leaving a widow and children," then during the life of his widow the income of the $10,000 was to go in equal parts to the widow and children, with remainder over to the children in fee, "but if he should die leaving no issue but leaving a widow," then to his widow for life and to his son Albert certain bequests, and the rest and residue was left in trust for his wife for life. On her decease certain legacies were to be paid, and then the income of what was left was to be paid to Albert for life, "and after the termination of all the life estates herein given, bequeathed and devised, and the payment and satisfaction of all the special and specific legacies above given and bequeathed, my trustee or trustees for the time being shall pay over and distribute all that shall then remain, if any remainder there be

of my property and estate, to the issue of my said sons, George P. and Albert D. Wright, to be theirs absolutely, or failing such issue, to my right heirs-at-law, to have and to hold to them, their heirs and assigns forever." Albert having died leaving no issue, the testator executed a codicil revoking the provisions made for him and his issue, making the same bequests, except as specially excepted in the codicil, to John F. Kimball, the trustee named in the will, "to be held, managed and disposed of as trustee as in said will provided, excepting so far as changed and modified by this codicil." By the codicil he gave to George the income of $20,000, instead of $10,000, after the death of the testator's wife, and provided for additional bequests to be paid after his wife's death. The codicil recited that he made it "hereby ratifying and confirming my said will in all respects save as changed by this instrument." It was held that the gift over to the testator's right heirs was not void as being too remote, and it was said that the gift to the heirs was not a gift over after a life estate in George, followed by a life estate or life estates during the life of his widow in his widow and children or in his widow alone. This was on the ground that the gift to the right heirs of the testator was subject to the life estate of George, only, and upon his dying leaving no issue surviving him the remainder vested at once in the persons who were then the heirs of the testator, though if he left a widow surviving, the possession of the income was postponed during her life.

In support of this construction the case of *Gray* v. *Whittemore,* 192 Mass. 367, was cited, in which the residue of the testator's estate was devised to trustees in trust to pay the net income to such of his children as should survive him during their lives, and also, upon the death of any of his sons, "to pay to the widow or widows of such son or sons, if any, the respective shares of income which would have been paid to the deceased husband or husbands if living, to-wit, so long as she or they shall remain the widow

or widows of such deceased; and upon the death of any of my daughters who shall survive me, to pay to the surviving husband or husbands of such deceased, if any, the respective shares of income which would have been paid to the deceased wife or wives if living, to-wit, during the natural life or lives of such husband or husbands; and upon the death of any of my sons leaving no widow, or of any of my daughters leaving no husband, or of any husband of any of my daughters who shall survive such daughter, and upon the death or marriage of any widow of any of my sons, such share of the principal sum and estate so held in trust as shall be proportional to the income that would have been paid to such deceased son, daughter, daughter's husband or son's widow, shall be paid or transferred to the issue, if any, of such deceased son or daughter, and in default of such issue at the time of such decease or marriage the same shall be paid or transferred to the respective heirs-at-law of such my deceased son or daughter; and this provision shall take effect, both in the case of such issue and in the case of default of such issue at the time of such decease or marriage, whether such decease or marriage take place after my own death or before." A bill was filed by the trustees more than forty years after the death of the testator asking for instructions as to how they should distribute three shares of the trust fund, all the life interests in which had come to an end. It was contended that the life estates given to the surviving husbands or wives of the testator's children might go beyond the measure established by the rule against perpetuities,—of a life or lives in being and twenty-one years thereafter,—for one of his children might marry a person not in being at the time of his decease, and such person might be the survivor of the marriage, so that remainders which could take effect only upon the death or re-marriage of any such surviving husbands or wives might not become vested within the necessary period. It was held that this was undoubtedly true, and that a remainder which

could not become vested until the death or re-marriage of
the surviving husbands or wives of the testator's children
might by possibility not take effect until after the expiration
of the prescribed period, and so could not be sustained. But
it was held further that remainders that should appear to
be so limited as necessarily to vest in interest within the
period limited by the rule would be valid even though the
actual payment and transfer to the beneficiary, the right to
actual possession and enjoyment might be postponed to a
later period. Therefore it became material to determine
whether the interests given in remainder to the heirs-at-law
of the sons or daughters of the testator, "in the case of
default of such issue at the time of such decease or mar-
riage," were vested or contingent. It was held that the re-
mainders severally limited to the three of the testator's chil-
dren who died, each leaving issue and also surviving wife
and husband, vested in such issue at the decease of their
parents though the right of present possession was post-
poned in each case until the expiration of the intervening
life estate of the surviving wife or husband. This is the
rule followed in the case of *Brown* v. *Wright, supra.*

What we have said up to this point concerns particularly
the ultimate gift of two-thirds of the estate to the heirs of
the testatrix at the time of the final distribution. This is
so because it is manifest that a gift to those who may be
heirs of a person at a future time is not a vested estate and
is therefore subject to the rule against perpetuities. In ac-
cordance with this rule the circuit court properly decreed
that paragraph 15 of the will, so far as the gift of two-
thirds of the proceeds of the estate to the heirs of the tes-
tatrix is concerned, is null and void.

As to the gifts of one-sixth of the proceeds of the es-
tate to the Women's Christian Home Mission and of one-
sixth to the First Universalist Church, the court decreed
that these were valid gifts of one-sixth each of all the resid-
uary property covered by paragraphs 3 and 7 of the will

and vested at the death of the testatrix without a conversion into cash. Both the mission and the church are corporations which were in existence at the time of the testatrix's death. If they took vested interests at that time the rule against perpetuities was not applicable to the gifts, and their validity was not affected by the fact that they would not vest in possession within the time fixed by that rule. These corporations are both charities, but the application of the rule is not affected, under the circumstances of this case, by that fact. It has been frequently said that charitable gifts are not subject to the rule against perpetuities. But this is true only in a limited sense. A gift may be made to a charity which is not in existence and the beginning of whose existence is uncertain, or which is to take effect upon a contingency which may possibly not happen within a life or lives in being and twenty-one years afterward, and still be valid if there is no gift of the property in the meantime to or for the benefit of any private corporation or person. (*Russell* v. *Allen,* 107 U. S. 163; *Crerar* v. *Williams,* 145 Ill. 625; *Ingraham* v. *Ingraham,* 169 id. 432.) The immediate, unconditional devotion of a fund to charity, and not the time or manner of its application or administration, is the test of the validity of its creation. (*Ingraham* v. *Ingraham, supra.*) In Perry on Trusts (vol. 2, sec. 736,) the correct rule is announced: "If a testator ties up his property for a term, by possibility, longer than a life or lives in being and twenty-one years and nine months, and then gives it over to a charity, the gift to charity is void because of the perpetuity in the first taker. But a gift may be made to a charity not *in esse* at the time, to come into existence at some uncertain time in the future, provided there is no gift of the property in the first instance, or perpetuity in a prior taker." This statement of the law is approved in *Crerar* v. *Williams, supra,* where it is said, on page 646: "It will thus be seen that in order to bring a gift to charity, which is to vest in the future,

within the law against perpetuities, under the rule cited, there must be a 'prior gift,'—a 'first taker.' " In the will under consideration there was no immediate and unconditional devotion of funds to the charitable uses of the mission and the church, and there were a prior gift, a first taker and a perpetuity.

The bequest of two-sixths of the residue of the estate is contained only in the direction to the trustees, after the death of all the beneficiaries, to convert the property into cash and thereafter to divide it, in the proportion stated, among the heirs, the mission and the church. The law favors the vesting of estates at the earliest possible moment, but the rule is that a bequest contained only in a direction to divide or pay at a future time or upon the happening of a future event does not vest until the time of payment arrives. This rule, however, is subject to an exception that where the division, transfer or payment is postponed, not for any reason personal to the legatee but for the convenience of the estate,—as, to enable the application of the property to the use of a prior taker,—the gift will be regarded as vesting at the time the will takes effect, the right of enjoyment only being deferred. All of these rules are subject to the rule of first importance in the construction of wills, that the intention of the testator as expressed in his will shall govern. All interests will be regarded as vesting in accordance with that intention. We are not left in doubt as to the intention of the testatrix or compelled to resort to presumption to determine it. By the ninth paragraph of her will she has plainly declared, in express words, her intention that. no title or interest in any of the trust funds created by her will, or the money or property composing them, or in the income or any of its accumulations, shall vest in any beneficiary during the continuance of the trust. The language is clear, positive and direct. If the mission and the church were beneficiaries under the trust by the express direction of the testatrix, no title or interest in any

323–27

of the trust funds or in any property of the trust could vest in them during its continuance. While the law favors the vesting of estates, yet where, from a consideration of the language of the entire will, it is clear that the testator intended to postpone the vesting of the estate until the period of distribution that intention will be carried out. (*Starr v. Willoughby,* 218 Ill. 485.) All the gifts provided for in this will were bequests of personal property. The direction to the trustees was to pay in money. The real estate was to be converted into cash and the proceeds distributed. There was therefore an equitable conversion of the estate into personal property and the gifts were of personalty. (*Baker v. Copenbarger,* 15 Ill. 103.) This rule, it was said in that case, was so well settled it was not necessary even to refer to the authorities. The language of the ninth paragraph makes it certain that the question of the time when the interests of the various beneficiaries should vest was carefully considered, and the intention was deliberately arrived at and expressed that the time of vesting in each case should be only the time when the respective payments became due or division was to be made.

All the appellees treat this ninth paragraph of the will as merely a spendthrift provision, applicable only to the beneficiaries of the trust to whom monthly or quarterly payments are to be made, and having no reference to those beneficiaries among whom the trustees, on the completion of their trust, are directed to divide the cash into which they are required to convert the whole trust estate. So to regard the paragraph ignores entirely the language of the first part of it, which directs that "no title or interest in any of the several trust funds in my will created, or in the money or other property composing them, * * * or any of its accumulations, shall vest in any beneficiary under any such trust during the continuance of this trust." This applies to every beneficiary,—to everyone who may derive a beneficial interest from the fund,—and includes the bene-

ficiaries of the final disposition of the property under the terms of the trust: the mission, the church and the testatrix's future heirs. The appellees' construction ignores the words "in the money or other property composing them * * * or any of its accumulations,"—that is, the trust funds or their accumulations. These words refer to the *corpus* of the estate,—the real and personal property composing the trust funds,—the title to which in fee simple is vested in the trustees. The direction that no interest in the income accruing from the trust fund should vest in those beneficiaries to whom periodical payments were directed to be made from the income was all that was necessary so far as they were concerned, for they would not, under any circumstances, have any vested interest in the *corpus* of the estate. The direction that no title or interest in the money or other property composing the trust funds or any of its accumulations should vest in any beneficiary has no application to them, for the will did not purport to give them any interest, either vested or contingent, in such money or property. The language could have had no application except to the mission, the church and to the future heirs of the testatrix, who were the only persons interested in the *corpus* of the estate, and unless it refers to them it must be rejected. Paragraph 9, after this first clause, consists of provisions appropriate to a spendthrift trust, which are applicable only to those beneficiaries to whom periodical payments were directed to be made. They refer only to installments of income and have no application to the beneficiaries who take on final distribution.

It is argued that the purpose of paragraph 9 was to prevent any of the annuitants from having any control over the trust or any interest in it. The same reason applies to the takers of the ultimate gifts. The testatrix devised all her residuary property to her trustees for the purposes of the trust, gave them the management and control of the property with most extensive powers, authorized them to

do all things necessary for the advantageous management of the trust estate with full effect and the same as she could do if living, and eventually to convert it into cash and distribute the proceeds. The trustees took the estate in fee simple. (*Churchill* v. *Marr,* 300 Ill. 302; *Maginn* v. *McDevitt,* 269 id. 196; *Emmerson* v. *Merritt,* 249 id. 538; *Ebey* v. *Adams,* 135 id. 80.) Having confidence in her trustees she postponed the vesting of the interests, not of the annuitants alone but of the ultimate takers as well, so that there should be no person having a vested interest in the *corpus* of the estate who might attempt to control or interfere with the carrying out of the trust in accordance with her wishes.

It is argued that the mission and the church are not beneficiaries under the trust but are remaindermen after the termination of the trust. The trust can be terminated only by the distribution in cash of the proceeds derived from the sale of the trust estate, and if the mission and the church are entitled to anything it is only as beneficiaries of the trust.

It is also argued that "beneficiaries," in paragraph 9, refers only to the annuitants, and that this is shown by the words in paragraph 15, "upon the death of all the beneficiaries of the trust established by me herein," where "beneficiaries" cannot include the ultimate takers. The word "beneficiaries" in each of these places must be understood in connection with the context as well as the subject matter.

The rule laid down in 3 Jarman on Wills, (R. & T. ed.) 707, "that words occurring more than once in a will shall be presumed to be used always in the same sense unless a contrary intention appear by the context or unless the words be applied to a different subject," is founded on the primary canon of construction of wills that the intention of the testator is to be ascertained and given effect, and the rule itself recognizes that a different meaning may be expressed by the same words referring to a different subject matter or used in connection with a different context. "We can

not say, as a matter of law, that testators always mean pre-
cisely and definitely the same thing when they use the same
expression in different parts of their wills.   It is a good
rule to say that generally they do.   It is always, however,
a question of intention, and that intention, the context, or
the facts surrounding the subject, may show to be different
in different places although the same expression may be used
in both." (*United States Trust Co.* v. *Black*, 146 N. Y. 1.)
In the case of *In re Altdorfer*, 225 Pa. St. 136, a different
interpretation of the intention of the testator was required
by the use of the words "nearest relatives," in a devise of
property effective only in case the testator's wife should not
exercise a power of disposition, from the same words in a
devise as to which no such power was given.   So in *Roun-
tree* v. *Rountree*, 26 S. C. 450, it was held that while the
term "surviving children," in the connection in which it
was used in one clause of the will, meant children surviving
the testator, it did not by any means follow that the same
words were used in the same sense in another clause where
it was used in a different connection.   In the one clause it
was used in connection with a direct gift to the children to
take effect immediately upon the death of the testator, and
there was no other period to which the survivorship could
be referred except that of the death of the testator, but
in another clause it was used in a different connection al-
together, in reference to a gift preceded by a life estate,
which was not to take effect until after the termination of
such life estate.   In *Morrow* v. *McMahon*, 71 N. Y. Supp.
961, it was held that the words "lawful issue" should be
given the meaning of children in one clause and of descend-
ants in another.   So the word "beneficiaries," used in a gen-
eral sense in the ninth paragraph, with a context in no way
limiting the meaning but requiring the rejection of some
words if a limited meaning is to be given to it, includes all
the beneficiaries of the trust.   The same word used in the
fifteenth paragraph, with a context directing a distribution

to certain beneficiaries after the death of all the beneficiaries there, requires a signification which would exclude the beneficiaries to whom the distribution was to be made. The direction for the division of the estate contained in paragraph 15 is invalid because the time of division is beyond the limit fixed by the rule against perpetuities.

Since the ultimate gifts of the trust estate after its conversion by the trustees into cash are invalid, the question arises, What is the effect of this invalidity on the other provisions of the will? The rule for the determination of this question is that the valid provisions will be upheld if they can be separated from those which are invalid and given effect without doing violence to the intention of the testator and destroying his scheme for the disposition of his property. On the other hand, if the will constitutes one entire testamentary scheme and the valid and invalid provisions are so related and dependent upon one another that to sustain the valid provisions while the invalid fail will do violence to the testator's intention or produce manifest injustice, then all alike must be decreed invalid. (*Beal v. Higgins,* 299 Ill. 229; *Aldendifer v. Wylie,* 306 id. 426; *Carpenter v. Hubbard,* 263 id. 571.) The intention and motive of the testatrix are apparent on the face of the will. She had but one heir, her son, nearly sixty years old, whom she did not want to have any part of her estate in fee but for whom she wished to provide a sure and ample maintenance during his life beyond the reach of his creditors or his own acts. She desired to make bequests to two brothers and the children of one of them and to provide an income for life for her sister. She also wished to provide an income for life to the divorced wife of her son, the widow of her deceased son, and the widow of her living son if he should die leaving a widow, and she wanted to provide that the provision of her husband's will in favor of her son and his wife, who was subsequently divorced from him, should be carried out. After these purposes were all accomplished

she wanted to give the proceeds of her estate, one-third to the two charities in which she was interested and two-thirds to those who should be her heirs at that time. These wishes were all expressed in her will, and the provisions in regard to them are all valid except the proposed gift to the charities and the heirs and the excess of the gift to the widow of Charles S. Easton beyond twenty-one years after his death. The plan of the testatrix was not an inseparable testamentary scheme whose parts were dependent on one another. The gifts had no connection with one another, and the invalidity of any one or more of them would not have interfered with the testatrix's plan of disposing of her estate though the invalid gift or gifts should have failed. The ultimate gifts to the charities and the heirs being postponed to a period beyond that allowed by law are void and for that reason must fail. All the other provisions of the will constitute a distinct and independent portion of the will which can be executed without injustice to anyone or violence to the testamentary scheme. The testatrix's intention to deprive her son of any interest in fee in her estate will be disappointed, as well as her desire to assist the mission and the church in which she was interested, but the fact that these provisions fail affords no reason for destroying the provisions of her will in favor of the other objects of her beneficence and transferring all her property to the son, whom it was clearly her intention to deprive of it.

The appellees contend that it was error to enter a final decree construing the will because of the absence of necessary parties. The appellees raised this question in the circuit court by motion, by plea and by answer, and it is contended here that the executors and trustees would not be protected in the distribution of the property against the claims of certain contingent interests which were not represented in the proceedings. These interests are those of the persons who may be heirs of the testatrix at the time of final distribution, of the possible widow of Charles S.

Easton other than his present wife, who is a defendant to the bill, and of Shelton F. McGrath, an attorney for the appellant, who is the grantee in a deed from Charles S. Easton of an interest in the estate. All the persons who would be interested in the estate as heirs of the testatrix if the distribution were to be made at once, in accordance with paragraph 15, would be her brothers; in case of their death the niece and nephew, the children of George S. Hall; and in case of their death the children of the niece and nephew. The executors and trustees by their answer aver that in case of the death of all the persons who have been named the cousins of the testatrix would be her heirs-at-law; that Henry Blakeley and John M. Blakeley, sons of Russell Blakeley, deceased, who was an uncle of the testatrix, are necessary parties who were not made defendants to the bill, and that there are other cousins, whose names and addresses are unknown to the defendants, who should be made parties. The court sustained exceptions to these averments in the answer. The remainders in favor of persons who will be heirs of the testatrix at the time of the final distribution of her estate are contingent. The general rule that the interest of parties not before the court will not be bound by the decree is subject to the exception of the case where a party, though not before the court in person, is so far represented by others that his interest receives actual and efficient protection. The doctrine is especially applicable where the persons who are not before the court are only possible parties not in being and where the interest of all parties requires a decree which will completely and finally dispose of all the subject matter of the litigation. In such cases the doctrine of representation has been recognized, by which, if persons are before the court who have the same interest and are equally certain to bring forward the entire merits of the question so as to give the contingent interests effective protection, the court will render a complete decree, which will be binding upon the contingent interests in re-

version or remainder. This doctrine was announced in *Hale* v. *Hale*, 146 Ill. 227, and was followed in *McCampbell* v. *Mason*, 151 id. 500, and *Longworth* v. *Duff*, 297 id. 479. In the last case it was applied to living persons who were contingent remaindermen in case of the death of a life tenant without descendants surviving him. The cousins of the testatrix are in precisely the same situation as the nephew and niece and the grandnephews and grandnieces, except that they are one or two degrees further removed. The protection of the previous estates ncessarily inures to the benefit of the contingent interests of the cousins, and they are within the doctrine of representation as it has been heretofore decided.

The possible widow of Charles S. Easton, other than his present wife, is necessarily an unknown person and her interest contingent. Unborn children cannot be made parties to litigation or their contingent interests bound by the result of litigation to which they were not parties and in which they were not represented. (*Mortimore* v. *Bashore*, 317 Ill. 535.) This contingent future interest,—a mere expectancy in the trust estate,—would not require the impossibility of making the holder a party to every suit the trustees might be called upon to bring or defend in order to preserve their trust. As was said in *American Bible Society* v. *Price*, 115 Ill. 623: "The title is in the trustees, and the duty is imposed upon them to protect and preserve this interest for whomsoever shall be ultimately entitled to it. They are parties to the suit, and they stand for and represent, in this litigation, the ownership ultimately entitled to this fund, and such ownership is bound by their representation." *Green* v. *Grant*, 143 Ill. 61; *Temple* v. *Scott*, id. 290.

So far as Shelton F. McGrath is concerned, he is an attorney for the appellant in this case, and having advised, directed and prosecuted the suit, although he is not a party to the record, is bound by the decree. *Lightcap* v. *Bradley*, 186 Ill. 510.

The trustees in their answer averred that the complainant, at the time the will was drawn, was fifty-four years old, in good health, of good education but no business experience or capacity; that he had never earned his living but had depended entirely upon an allowance made to him by his parents; that he was a source of worry and expense to his mother, and by reason of his acts she was repeatedly required to spend large sums of money on his account in addition to the payment of his regular allowance, and the will was made with full knowledge on the part of the testatrix of a great deal of the misconduct and improvidence of her son, his inability to manage and preserve her estate and for the purpose of protecting him, so far as she was able, from the effect of his own acts and his wife from poverty if she should outlive him. Exceptions by the complainant to these parts of the answer were sustained and they were expunged. The spendthrift provision contained in paragraph 9 applies to all the beneficiaries of the income of the trust. There can be no doubt that the testatrix intended this provision to apply to the son, and we said in *Wagner* v. *Wagner,* 244 Ill. 101, that where the language used in a will was sufficient to create a spendthrift trust, no inquiry could be made whether or not the person for whose use it was created was, in fact, a spendthrift. The allegations of the answer in this regard were irrelevant and properly expunged.

The decree is reversed and the cause remanded to the circuit court, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*

STONE, C. J., and HEARD, J., dissenting.