JAMES A. JOHNSON *et al.*

*v.*

CHARLES F. PRESTON *et al.*

*Opinion filed April 18, 1907.*

1. WILLS—*when trust provision of will creates a perpetuity.* A provision devising to the testator's executor certain land, to have and to hold for the space of twenty-five years "from and after the probate of this will," is void as creating a perpetuity, in that there is a possibility that the will may not be probated within the period limited by the rule against perpetuities.

2. SAME—*when invalid provision does not destroy entire devise.* If the invalid provisions of a will can be separated from the valid portions and still give effect to the general testamentary scheme, the invalid provisions may be disregarded and the valid portions upheld.

3. SAME—*when devise may be upheld though trust provision is void.* Where the named beneficiaries of a trust created by will are in being and are to share equally in the income of the property during the trust period and at the end thereof receive the fee in equal portions, without any conveyance by the trustee, who is charged with no active duties except to see that the taxes are paid and to pay annuities which are charged upon the land, the fact that the trust provision must be held void because of uncertainty as to when the trust will begin does not defeat the other provision, and the beneficiaries will take the fee with the right to present enjoyment.

4. SAME—*restriction against alienation of fee is void.* Where a devise is made in fee, either of a legal or equitable interest, all limitations tending to deprive the estate of any of the incidents appertaining to the interest created, except in the case of a spendthrift trust, are repugnant to the estate devised and are void.

CARTWRIGHT, J., specially concurring.

APPEAL from the Circuit Court of Lee county; the Hon. O. E. HEARD, Judge, presiding.

The heirs-at-law of Jane Platt filed a bill in the Lee county circuit court to have clauses 5 and 6½ of the will of Jane Platt declared void and for a partition of the real estate devised by said clauses.

Jane Platt died testate March 1, 1904, leaving complainants and James J. Platt her heirs-at-law. Said Jane Platt left a will consisting of eleven clauses and a codicil of one clause. The first clause directs the payment of funeral expenses and all just debts out of the first money that may come into the hands of the executor thereinafter named. The second clause bequeaths to John R. and George H. Platt a chest of cabinet tools, to be enjoyed jointly or individually, as the legatees may elect. By the third James J. Platt is given the household goods of the testatrix to have and to hold and to enjoy during his natural life, and at his death to be divided equally between the five sons of said James J. Platt, namely, John R., George H., Frank J., Robert C. and Harold S. Platt. In the fourth the testatrix gives some directions respecting the care of certain cemetery lots. The fifth clause is as follows:

"*Fifth*—I give and devise to my executor hereinafter named, in trust for the purposes and for the time hereinafter mentioned, my farm of 120 acres in Willow Creek township, Lee county, Illinois, described as follows, to-wit: The east half of the south-east quarter and the south-east quarter of the north-east quarter of section thirty-five (35), in township thirty-eight (38), north, range two (2), east of the third principal meridian. To have and to hold for the space of twenty-five years from and after the date of the probate of this will, in trust, nevertheless, for the use, benefit and enjoyment of John R. Platt and George H. Platt, with no power of sale, conveyance or alienation of said land during said twenty-five years by said trustee or the beneficiaries in said trust, or either or any of them, except that said beneficiaries may convey, one to the other, after both become of lawful age, if they wish. After the expiration of said twenty-

five years then the above described land to go and to vest in
the said John R. Platt and George H. Platt, or their heirs,
absolutely, or in the event that one of them has conveyed
his interest to the other, then absolutely to the one to whom
the other conveyed his interest, or his heirs. It being under-
stood that both share equally in the use, benefit and enjoy-
ment of said property during the period of said trust and·
equally in said property after said trust is ended, in case
there has been no conveyance from one to the other. And
that it is my wish that they may live upon and work upon
said farm and make it their home, preserve and keep it in
good shape and not allow it to be neglected and run down.
The said trustee shall annually, out of the proceeds of said
farm, pay to Mary J. Atkinson the sum of one hundred
(100) dollars, payable twenty-five (25) dollars each quar-
ter, for the space of the full twenty-five years of the said
trust, unless said Mary J. Atkinson marries or dies, in which
event, or either of them, said annuity is to be discontinued.
And after the expiration of the period of said trust, if Mary
J. Atkinson is then living and unmarried, said annuity of
$100 is to be to her as before, out of said land, until her
death or marriage. And said annuity is hereby made a
charge on said land, to be paid out of said land or the avails
thereof."

The sixth clause devises to James J. Platt a life estate in
certain real estate with remainder in fee to the five sons men-
tioned in the third clause. The next clause is in the follow-
ing language:

"*Six and one-half*—I give and devise to my executor
hereinafter named, in trust, for the purposes and for the
time hereinafter mentioned, my store property in the vil-
lage of Paw Paw, Lee county, Illinois, described as follows,
to-wit: Commencing nine and one-half feet west of the
north-east corner of lot two (2) in block two (2), in S. P.
Detamore's subdivision of lot three (3) in block two (2),
in the village of Paw Paw, Lee county, Illinois, as surveyed

226—29

and platted by William McMahan, county surveyor of Lee county, Illinois; running thence south forty (40) feet; thence west six (6) inches; thence south to the south line of said lot two (2); thence west to a point nine (9) feet east of the south-west corner of said lot two (2); thence north to the north line of said lot two (2); thence east to the place of beginning. Also an undivided half interest in and to twenty (20) feet of the brick wall to the height of twenty-three (23) feet from the bottom of the foundation wall, the said wall commencing at the south-east corner of the one-story addition to I. B. Berry's three-story and basement brick building, situated east nineteen (19) feet of lot three (3) and west nine (9) of lot two (2), in S. P. Detamore's subdivision of lot three (3) in block two (2), original town of Paw Paw Grove, now Paw Paw. Said wall, as above mentioned, is the wall running north, together with the right to the use of the ground on which the said undivided half of said wall stands, as long as said walls and buildings remain as they now are, the last above being a party wall right given to me by written conveyance as above from I. B. Berry, dated December 24, 1897. To have and to hold for the space of twenty-five years from and after the date of the probate of this will, in trust, nevertheless, for the use, benefit and enjoyment of Frank J. Platt, Robert C. Platt and Harold S. Platt, with no power of sale, conveyance or alienation of said land or property, or any part thereof, during said twenty-five (25) years by said trustee or the beneficiaries of said trust, or either of them, except that said beneficiaries may convey one to the other after they become of lawful age, if they wish. After the expiration of the said twenty-five years, then the above described land and property to go to and vest in the said Frank J. Platt, Robert C. Platt and Harold S. Platt, or their heirs, absolutely, or in the event that one of them has conveyed his interest to the other, then absolutely to the one to whom the other has conveyed his interest, or his heirs. It being understood that all share equally in the

use, benefit and enjoyment of said property during the period of said trust and equally in said property after said trust is ended, in case there has been no conveyance from one to the other. The said trustee shall, out of the proceeds of said property, pay to James J. Platt the sum of two dollars and fifty cents per week ($2.50), payable weekly, for the space of the full twenty-five years of said trust, unless said James J. Platt dies, in which event said payment is to be discontinued; and after the expiration of said trust, if James J. Platt is then living, said payment of two dollars and fifty cents per week is to be paid to him as before, out of the proceeds of said land and property, until his death. And said payments are hereby made a charge on said land and property, to be paid out of said land and property or the avails thereof."

The seventh clause reads as follows:

"*Seventh*—The said trustee is hereby authorized and directed by me to see that the taxes are paid in due season on all of said properties, that they be kept insured and that they be kept in good repair and improvement, to the end that such properties may be kept in good shape and will produce as much revenue as possible. And in event of the death, removal or inability to act of said trustee, then in that case I authorize and direct the county court of Lee county, Illinois, to appoint some suitable and discreet person in his place."

Passing over the eighth clause, which is not important to a correct understanding of the questions involved, the ninth clause is as follows:

"*Ninth*—It is my orders and direction that no part of my property above described shall go to the mother of said John R. Platt, George H. Platt, Frank J. Platt, Robert C. Platt and Harold S. Platt in any way, shape or manner, but shall be held strictly for the parties above mentioned and their heirs, excluding their said mother, and a failure to observe these directions will invalidate this will and render it null and void."

The last clause nominates Charles F. Preston as executor, and the codicil reduces the yearly annuity of Mary J. Atkinson, given by clause 5, from $100 per annum to $25 per annum.

The foregoing will and codicil were duly admitted to probate by the county court of Lee county on the 30th day of March, 1904, and the executor named accepted the trust, qualified, received letters testamentary and entered.upon the discharge of his duties. The heirs-at-law of the testatrix by the bill challenge the validity of clauses 5 and 6½ of said will as being in violation of the rule against perpetuities and an illegal limitation upon the power of alienation, and pray for a partition of the real estate described in said clauses, as intestate property. The executor and James J. Platt and his five sons were made defendants, all of whom joined in a demurrer to the bill, which was sustained and the bill dismissed for want of equity. Complainants below appeal to this court and assign error upon the order sustaining the demurrer and decree dismissing the bill.

E. E. WINGERT, and A. H. SWITZER, for appellants: ·

A perpetuity is a limitation taking the subject matter thereof out of commerce for a period of time greater than a life or lives in being and twenty-one years thereafter. If by any possibility a violation of this rule can happen, then the devise must be held void. *Waldo* v. *Cummings,* 45 Ill. 421; *Post* v. *Rohrbach,* 142 id. 600; *Bigelow* v. *Cady,* 171 id. 229; Tiffany on Real Prop. sec. 152; *Schuknecht* v. *Schultz,* 212 Ill. 43; Kales on Future Interests,. secs. 254, 255, and citations.

Where a subsequent limitation over in a will is void by reason of its being impossible, repugnant or contrary to law, the· estate becomes vested in the first taker discharged of the limitation. *Howe* v. *Hodge,* 152 Ill. 252.

A violation of the rule against perpetuities will not be tolerated when the property is covered by a trust, any more

than when such violation actually appears in the creation of a legal estate. *Bigelow* v. *Cady*, 171 Ill. 229; *Howe* v. *Hodge*, 152 id. 252; Tiffany on Real Prop. sec. 155.

If the time named for the vesting of a future interest is not measured by lives but is merely a definite number of years, it is necessary that this be less than twenty-one years in order that the limitation be valid. Tiffany on Real Prop. sec. 154.

The requirement that the contingency on which the estate is to vest shall occur within the time named by the rule is absolute, and the mere improbability of its occurrence after that time is immaterial. Nor is a limitation not in compliance with the rule rendered valid by the fact that subsequent events caused the contingency to occur within the legal period. Tiffany on Real Prop. sec. 154; *Lawrence* v. *Smith*, 163 Ill. 149.

A. C. BARDWELL, for appellees:

Invalid conditions or provisions against alienation in a deed or will do not defeat the estate to which they are annexed. In such cases the gift stands and the invalid condition or provision is rejected. 24 Am. & Eng. Ency. of Law, (2d ed.) 872.

Where a vested estate is given distinctly, and there are annexed to it conditions, limitations, powers, trusts (including trusts for accumulation) or other restraints relative to its use, management or disposal that are not allowed by law, it is those restraints, and the estates limited on them, that are void, and not the principal or vested estate. 2 Washburn on Real Prop. (3d ed.) 653.

A restriction on the alienation of a fee simple, though limited in time, is void. *Roosevelt* v. *Thuman*, 1 Johns. Ch. 220; *Potter* v. *Couch*, 141 U. S. 296.

A devise vests in interest when the right of property first attaches, without regard to whether there is a present right of possession or not. *McCartney* v. *Osburn*, 118 Ill. 403.

An estate is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment. *Scofield* v. *Olcott,* 120 Ill. 362.

There may be a vested remainder in an equitable as well as in a legal estate. *Scofield* v. *Olcott,* 120 Ill. 362.

. Estates, legal or equitable, given by will should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent on a future event. *Scofield* v. *Olcott,* 120 Ill. 362; *Potter* v. *Couch,* 141 U. S. 296.

The mere fact that one estate under a will is provided to take effect at the termination of an intervening one will not have the effect to prevent both estates becoming vested at the moment of the decease of the testator, the one in possession, the other in prospect or remainder. *Nicoll* v. *Scott,* 99 Ill. 529.

A devise of rents, issues and profits is equivalent to a devise of land itself. *Howe* v. *Hodge,* 152 Ill. 252; *Handberry* v. *Doolittle,* 38 id. 202; *Ryan* v. *Allen,* 120 id. 644; *Morrison* v. *Schorr,* 197 id. 552; *Bigelow* v. *Cady,* 171 id. 233; 30 Am. & Eng. Ency. of Law, 743.

Where lands are devised to a trustee, to be held by him in trust until A shall attain his majority, when the same shall be conveyed to him in fee, this will confer on A a vested estate in fee simple, subject to the prior chattel interest given to the trustee. *Loan Co.* v. *Bonner,* 75 Ill. 315.

.It is indispensable to the operation of a will that it be not only witnessed and published in the manner prescribed by statute, but that it also be admitted to probate. *Harris* v. *Douglas,* 64 Ill. 466.

Mr. JUSTICE VICKERS delivered the opinion of the court:

*First*—Appellants contend that clauses 5 and 6½ are void because they violate the rule against perpetuities. In our consideration of this question we will first consider it with reference to the estate or interest devised to the ex-

ecutor. The sections of the will in question need not be considered separately. The language employed in the two sections brings them both under the same rules of law. The effective words which create the estate of the executor and limit its commencement and duration, separated from the language relating to the use, are as follows: "I give and devise to my executor hereinafter named, my farm of 120 acres in Willow Creek township, described as follows, (description,) to have and to hold for the space of twenty-five (25) years from and after the date of the probate of this will," etc. This language is followed in each section with other language intended to create a beneficial interest in certain named grandchildren of the testatrix, but there is nothing in either of said sections, or elsewhere in the will, that in any way modifies the language above quoted creating and defining the estate of the executor. The contention is that the language "from and after the probate of this will," being an uncertain contingency upon which the estate of the executor shall come into being, which may not happen within the time prescribed by the rule against perpetuities, makes the devise void.

A perpetuity is defined to be a limitation taking the subject thereof out of commerce for a longer period of time than a life or lives in being and twenty-one years thereafter, and in the case of a posthumous child, a few months more, allowing for the period of gestation. (Bouvier's Law Dict; *Waldo* v. *Cummings,* 45 Ill. 421; *Rhoads* v. *Rhoads,* 43 id. 239; *Lunt* v. *Lunt,* 108 id. 307; *Hart* v. *Seymour,* 147 id. 598; *Howe* v. *Hodge,* 152 id. 252.) The question to be determined under the rule is, when does the estate vest? The interest of the executor is subject to a condition precedent,—that is, it cannot arise, by the very words of the devise itself, until the probate of the will. Since there is no precedent life estate, the vesting of the estate of the executor must be within twenty-one years, (Tiffany on Real Property, sec. 154,) and the time within which the estate is to

vest is computed from the date of the testatrix's death. (Kale on Future Interests, sec. 255; *Madison* v. *Larmon,* 170 Ill. 65; *Ingraham* v. *Ingraham,* 169 id. 432.) No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the execution of the instrument, or in case of wills, at the death of the testator. (Gray on Perpetuities, sec. 201; *Howe* v. *Hodge, supra; Lawrence* v. *Smith,* 163 Ill. 149.) It is not enough that a contingent event may happen, or even that it will probably happen, within the limits of the rule against perpetuities. If it can possibly happen beyond those limits an interest conditioned on it is too remote. (Gray on Perpetuities, sec. 214; *Lawrence* v. *Smith, supra; Eldred* v. *Meek,* 183 Ill. 26; *Owsley* v. *Harrison,* 190 id. 235; *Chapman* v. *Cheney,* 191 id. 574; *Schuknecht* v. *Schultz,* 212 id. 43.) It would seem to result necessarily from the rule laid down in the above authorities that the condition precedent upon which the estate of the executor was to vest,—that is, the probate of the will,— brings the estate of the trustee directly within the rule against perpetuities.

In this connection the language of the court, speaking through Justice Scholfield, in *Husband* v. *Epling,* 81 Ill. 172, is applicable: "The event here is, 'when the estate of Thomas Mason is settled up.' Can it be said to have been morally certain, when the instrument was executed, that the estate ever would be settled up? The law requires estates to be settled and fixes a period within which it shall be done, but it does not, of and by itself, settle them. The presumption is that the law in this regard, as in others, will be obeyed. But this presumption does not amount to absolute certainty. The enforcement of the law, depending on human agencies, is liable to be affected or controlled by many circumstances, and instances where it is not only not fully enforced, but is openly violated, are within the experience of all, so that it is impossible to predict with moral certainty that a thing

will be done simply because it is the command of the law that it shall be."

While the reasoning above quoted was employed in discussing the question whether an instrument payable "when the estate of Thomas Mason is settled up" was a promissory note, it is pertinent here as bearing upon the uncertainty as to when a will will be probated, even though that act, like the settlement of an estate, is required by law. In *Fowler* v. *Ingersol*, 127 N. Y. 472, (28 N. E. Rep. 471,) it was held that a will suspending the power of alienation for more than two lives in being at the time of the testatrix's death is not made valid by the fact that it gives the power of sale within that period if permission is obtained from the Supreme Court. "Such permission," the court say, "might not be given, and unless it was, the power of alienation was suspended until the estate vested in possession in the remainder-man." See, also, *Cruikshank* v. *Chase*, 113 N. Y. 337; 21 N. E. Rep. 64; *People* v. *Simonson*, 126 N. Y. 299; 27 N. E. Rep. 380.

It is clear from the language of the will itself, that whatever interest the executor took under it could not vest in him until the probate of the will, and while this event would, in the ordinary and usual course of events, probably occur within a few months, or at most a few years, after the death of the testatrix, yet it cannot be said that it is a condition that must inevitably happen within twenty-one years from the death of the testatrix. Since a bare possibility that the condition upon which the estate is to vest may not happen within the prescribed limits is all that is necessary to bring the devise in conflict with the rule, we see no escape from the conclusion that the devise to the executor offends the rule against perpetuities and is therefore void. The devise to the executor is not saved from the effect of this rule by reason of the fact that it is merely a term of years instead of an estate in fee simple or other freehold interest. Terms of years may be created to commence *in futuro*, but if the

condition upon which they are to arise is uncertain and may not happen within the limits fixed by the rule against perpetuities, such terms are void.   1 Washburn on Real Property, sec. 468.

What has already been said makes it unnecessary to discuss the question argued by counsel respecting the character of the trust.   Since the devise to the executor must be held void, it is unnecessary to consider whether the trust which the testatrix attempted to create was active or passive.

*Second*—Since, as we have seen, the executor can take nothing under this will, this brings us to the question whether the estate devised to the grandchildren can be sustained.   It is a well established rule that where valid and invalid portions of a will are so related to the general scheme of the testator as to be interdependent, so that they can not be separated without doing violence to the testamentary plan, the entire disposition must fail.   (*Lawrence* v. *Smith, supra; Eldred* v. *Meek, supra; Greenwood* v. *Greenwood,* 178 Ill. 387; *Reid* v. *Voorhees,* 216 id. 236.)   The converse of this rule is likewise well established, that where the invalid portions can be separated from that which is valid and still give effect to the general testamentary scheme, the invalid clauses will be disregarded and those that are valid upheld.   (See cases cited *supra.*)   The controlling consideration in the construction of the will is to discover the intention of the testator as expressed in the words of the will, and to give effect to such intention if it can be done consistently with the law.   (*Howe* v. *Hodge, supra.*)   When the entire will before us is read and each clause is compared with the others, the controlling purpose of the testatrix to give her son James J. Platt and his five sons her entire estate is manifest.   With the exception of one annuity payable to Mary J. Atkinson, of $100 per year, no other person is given any beneficial interest whatever in this estate except her son and grandchildren above mentioned.   It is also to be noted that the interests of the grandchildren devised

under clauses 5 ᾽and 6½ were not postponed until the expiration of the twenty-five years during which the trust was intended to continue. It is provided in these clauses that the grandsons should "share equally in the use, benefit and enjoyment of said property during the period of said trust and equally in said property after said trust is ended." As to the farm devised in clause 5, the testatrix expresses the wish that her two grandsons to whom she devises the farm shall live upon said farm and work the same and make it their home, preserve it and keep it in good shape, and not allow it to be neglected and run down. The same language is found in clause 6½ in relation to the store property devised to the other three grandsons, except there is nothing said in this clause in relation to their living in the property. There is, as respects both the devises, a clear intention to give an absolute fee simple estate to the devisees mentioned, with a present right of enjoyment. The title is not made to depend upon any event or contingency that is to happen during the twenty-five years or at the end thereof. If the trust estate was upheld and the trustee was continued there is no act that he is given power to perform that could in any way affect the interests of these devisees. He is not required, at the end of his term, to convey, release or distribute to the devisees. Their interest comes, not by way of remainder, but *in presenti*. In other words, the trust here sought to be created, if it could be upheld, is not a trust created for the purpose of serving the interests of some charitable object or a third person, but is an attempt to create a trust for the benefit of the same persons to whom the estate is devised. If the trust should be upheld and given effect the ultimate result would not be any different from what it is with the trust eliminated. In both cases the property of the testatrix goes to the same persons, in the same way, at the same time and in the same proportions. If this is true, how can it be said with any show of reason that the interests of the devisees under clauses 5 and 6½

are so interdependent with the estate attempted to be given to the trustee that if his devise falls it must pull their estate down with it?

While a remainder may be accelerated where the precedent limitation fails or for any reason comes to an end and the next tenant in succession is in being and competent to take when the condition precedent to the vesting of the estate happens, still this rule need not be invoked here, for in this case there is no precedent estate sought to be vested in the executor which must expire before the devisees are let into their estate. While the language of the will attempts to devise the land to the executor for a term of years from and after the probate of will, in trust, etc., and he is directed to *see* that the taxes are paid and the premises kept in repair and insured, yet all the things required of the executor are for the benefit of the devisees of the beneficial interests, and are not inconsistent with the full and complete vesting of the title in the grandchildren together with the immediate enjoyment of their estate. If it be said the executor is charged with the payment of the annuities to James J. Platt and Mary J. Atkinson, and that this affords a reason why the trust and the use must stand or fall together, we reply that these annuities are made a direct charge upon the land, and that they will follow the land into the hands of anyone who may become the owner. The failure of the trust estate will in no way defeat or delay the annuitants in the collection of their money. The same may be said with reference to the payment of taxes on these lands. The trustee is to *"see"* that the taxes are paid. What duty is imposed on the executor in this regard that the usees will not be compelled to perform in order to save their lands from sale? Is it necessary to have a trustee *"see"* that one pays the taxes or makes necessary and reasonable repairs on his own property? Let us for a moment suppose that the estate of the trustee is upheld and he is continued under the will for twenty-five years and he should fail and neglect to perform

the duties enjoined on him; who would have a right to bring him to account for his default? The answer must be, the persons for whose benefit the trust was created, who are, as we have seen, the same persons upon whom self-interest and the law impose the same duties and obligations for a breach of which the trustee would be called to an account. Unless the devisees place the funds in his hands to discharge these obligations the will makes no provisions for his obtaining the funds in any way, except as respects the annuities he might bring a suit to subject the land to their payment, and the annuitants can do this by the shorter course of bringing the action in their own names. It may not happen often that an attempt to create a trust can be held invalid and yet the testamentary scheme be carried out in all its essential details, but the case at bar is one wherein that can be done, as it seems to us, without departing in any matter of substance from the clearly expressed intent of the testatrix.

The views herein expressed, in so far as the trust is held invalid and the devise to the beneficiaries is upheld, find support in the following authorities: *Kennedy* v. *Hoy*, 105 N. Y. 134; 11 N. E. Rep. 390; *Underwood* v. *Curtis*, 127 N. Y. 523; 28 N. E. Rep. 585; and the principle is clearly recognized and applied in *Nevitt* v. *Woodburn*, 190 Ill. 283. And among the many cases holding that a devise in fee subject to a conditional limitation which is void for remoteness is not affected by such remoteness, and that under such circumstances an absolute estate vests in the first taker, the following may be cited: *Hudson* v. *Gray*, 58 Miss. 882; *Miller* v. *Macomb*, 26 Wend. 229; *Manice* v. *Manice*, 43 N. Y. 303; *Theological Education Society* v. *Attorney General*, 135 Mass. 285; *Outland* v. *Bowen*, 115 Ind. 158; 17 N. E. Rep. 281; *Comegys* v. *Jones*, 63 Md. 317; *Henderson* v. *Henderson*, 113 N. Y. 1; 20 N. E. Rep. 814.

In the case last above cited the devise was: "All the rest, residue and remainder of my estate, both real and per-

sonal, wheresoever situated, I hereby authorize, empower and direct my executor to partition, divide and apportion equally among all my children living at the time of making such partition and division and the child or children of such of my children as may be dead leaving issue; * * * and I do hereby give, devise and bequeath to each of my children the share or portion of my estate so to be partitioned, divided and apportioned to them, respectively, as aforesaid;" and it was provided that in case of the death of any of the children without issue before the partition, then the portion of such deceased child should go to the surviving brothers and sisters. It was provided in the will that the executor should make partition within five years "from the date of the probate of the will." It was held that the executor did not take a valid trust, but that the estate vested in fee in the beneficiaries, but the direction to the executor to partition, divide and apportion the residuary estate, though ineffectual to create a valid trust, might be upheld as a valid power in trust. This case, in many respects, is like the case at bar, and is an authority sustaining the principle involved in the conclusion we have reached in this case. There is nothing here, as there was in the late case of *Starr* v. *Willoughby*, 218 Ill. 485, to indicate a clear intention of the testator to postpone a vesting of the estate in the beneficiaries. On the contrary, the intention to vest the title in the grandchildren immediately is made clear from a reading of the several provisions of the will.

*Third*—The general rule is, that where a devise is made in fee, either of a legal or an equitable interest, all limitations tending to deprive the estate of any of the incidents appertaining to the interest created are held to be repugnant to the devise, and void. To transfer a fee and at the same time to restrict the free alienation of it, is to say that a party can give and not give, in the same breath. (*Steib* v. *Whitehead*, 111 Ill. 247.) There is an apparent exception to this rule where what is known as a spendthrift trust is

created. As illustrating this doctrine, see *Steib* v. *White-head, supra,* and *Bennett* v. *Bennett,* 217 Ill. 434. But the devise in this case bears no resemblance to a spendthrift trust, and even if it can be said that cases of that character are an exception to the general rule,—which is not before us and which we do not decide,—the case at bar does not fall within such exception, and it must therefore be held, in accordance with the general rule, that the attempt of the testatrix in clauses 5 and 6½ to restrain the alienation of the estates of the devisees is wholly void, as being in restraint of alienation.

Section 9 of the will is not involved in this litigation, and no consideration of it is called for by the issues involved.

Finding no error the decree is affirmed.

*Decree affirmed.*

CARTWRIGHT, J., specially concurring:

I agree with the conclusion reached by the court in this case, but regard the third proposition of the opinion as not applicable to the case. After attempting to create an intermediate estate in a trustee for a period of twenty-five years the testatrix devised the property to certain named persons, or their heirs, absolutely, meaning, as I think, that after the expiration of twenty-five years the property should go to the persons named, if living, or if deceased, to those who would then stand in the relation of heirs of said persons, excluding their mother. The word "or" interposed between the names of the devisees and their heirs indicates substitution in a will of the nature of this one. (*Ebey* v. *Adams,* 135 Ill. 80; 1 Redfield on Wills, 486.) As the first devisees are living and the attempt to create an intermediate estate failed, they take the property in fee.