William Joseph **BREAULT** et al., etc.,
Plaintiffs,

v.

Harold L. **FEIGENHOLTZ** et al., etc.,
Defendants.

No. 61 C 672.

United States District Court
N. D. Illinois, E. D.
June 1, 1965.

John J. Yowell and G. Kent Yowell, Chicago, Ill., for plaintiffs.

Driscoll & O'Brien, Chicago, Ill., for defendant St. Hedwig, Industrial School for Girls, Polish Manual Training School for Boys.

Richard P. Fredo, Tenney, Sherman, Bentley & Guthrie, Chicago, Ill., for Estelle Angela Breault.

Joseph P. Savage, Richard Lefebure, Chicago, Ill., for Little Sisters of the Poor.

Hirsch E. Soble, Chicago, Ill., for Harold Feigenholtz, as executor and trustee u/w/o Oscar J. Breault, dec'd, Eugene A. Busch, successor trustee u/w/o Oscar J. Breault, dec'd, and Irma J. Meyers.

Jacob Shamberg, Chicago, Ill., for Harold Feigenholtz and R. Dahm, u/w/o Kathryn Breault.

Shehee & Berent, Wheaton, Ill., for Kenneth Breault.

MAROVITZ, District Judge.

This is the third of a series of cases involving the purported will of Oscar J. Breault, who died on July 16, 1959 and whose purported will was admitted to probate in the Probate Court of Cook County on October 14, 1959. For convenience Oscar's purported will is hereinafter sometimes called his will. The first of these cases to be decided was appealed to the Illinois Supreme Court which held that Oscar, in purporting to exercise a power of appointment conferred upon him by the will of his mother (Kathryn M. Breault who died on August 3, 1952), did not make the appointive property a part of his estate. In re Estate of Breault, 29 Ill.2d 165, 193 N.E.2d 824. That holding has a bearing in this court, for there is pending here, as No. 60 C 1060, a suit filed on July 1, 1960 to set aside Oscar's will on the ground that it was procured by undue influence. In No. 60 C 1060 the jurisdiction of this court, invoked on the basis of diversity, is challenged on the ground that Oscar's probate estate is insolvent and the requisite jurisdictional amount is therefore lacking. If that is so, No. 60 C 1060 would have to be dismissed unless the setting aside of Oscar's will would entitle the plaintiffs (who are the same in this case as in No. 60 C 1060) to all or some part of the substantial trust estate created by the will of Oscar's mother, Kathryn M. Breault, thus providing the necessary jurisdictional amount.

In the instant case, in the first Count of the Amended Complaint, the plaintiffs, who are children of Oscar Breault by the second of three marriages (the first two ended in divorce), seek declaratory relief pursuant to Title 28, Sections 1332 and 2201 of the United States Code. They contend in substance, as will be detailed below, that they are equitably entitled to all of their grandmother's estate. In the second Count they seek an accounting from the defendants Feigenholtz and Dahm, individually and as trustees under the will of Kathryn M. Breault, with respect to certain stock which is or was a part of Kathryn's estate. Obviously, if the plaintiffs have no interest in their grandmother's estate and if they can establish none even if Oscar's will is declared invalid, they have no right to the relief sought under Count II, nor indeed could this court entertain No. 60 C 1060 should Oscar's probate estate be shown to be worth less than $10,000. It is therefore desirable to dispose of Count I at this juncture, i. e., to determine what rights, if any, the plaintiffs might acquire in Kathryn's estate whether or not it be determined that Oscar's will was in fact procured by undue influence.

Kathryn M. Breault's will was admitted to probate by the Probate Court of Cook County on August 12, 1952. The defendants Feigenholtz and Dahm were named as her executors, administered her estate and were discharged in 1953. The will gave the residue of Kathryn's estate to Feigenholtz and Dahm as trustees during Oscar's lifetime and they in fact acted as trustees until Oscar's death. The will provided, inter alia, as follows:

"*SIXTH:* Payments to all beneficiaries of the trust estate, excepting minors and persons under disability, shall be made to such beneficiaries in person or upon their personal receipt and to no one else and no interest of any beneficiary shall be assignable in anticipation of payment nor be liable in any way for such beneficiaries' debts or obligations.

\*     \*     \*     \*     \*     \*

"*EIGHTH:* In the event of any suit, directly or indirectly instituted by any beneficiary or beneficiaries hereunder against the Trustees to construe this trust or to terminate this trust, the cost, expenses and charges in connection with the said litigation shall be paid by the said beneficiary or beneficiaries' distributive share.

\*     \*     \*     \*     \*     \*

"*TENTH:* The Trust Estate shall be distributed both as to income and principal in the following manner:

(A) The Trustees shall pay over and distribute to my son, OSCAR J. BREAULT, all of the net income from the Trust Estate in installments not less frequently than quarter annually from the time of my death and as long as he shall live.

(B) I hereby direct and provide that no part of the income from the trust estate, and no part of the corpus of said trust estate hereinbefore created for the benefit of my son, OSCAR J. BREAULT, shall ever be liable in any way for any debts that my said son may at any time contract, or for any debts that he may have contracted, and shall never be liable for any other claim of any kind against him.

(C) If at any time, for the proper support and maintenance of my said son, or for any other purpose deemed expedient to my said Trustees, it shall be advisable to pay unto said OSCAR J. BREAULT any sums greater than the annual net income derived from my said estate so held for the benefit of my said son, then I direct my said Trustees, to pay such sums unto said OSCAR J. BREAULT, and in order to raise additional sums, I direct and empower my said Trustees, in their discretion, to mortgage, pledge, or sell any portion of the said Trust Estate for their benefit; if such action seems necessary.

I desire my Trustees to so administer the trust herein created so that in their dealings with my said son, they shall as nearly as possible deal with and treat him as I would myself were I living.

(D) Upon the death of my son, OSCAR J. BREAULT, the property of the Trust Estate shall be distributed according to the provisions and terms of the Last Will and Testament of my said son, OSCAR J. BREAULT, and if he shall fail to execute a Will, or if such Will shall not be admitted to probate, I hereby direct distribution of the said Trust Estate in the following manner:

One-third (⅓) thereof to the LITTLE SISTERS OF THE POOR of Chicago. One-third (⅓) thereof to the ST. HEDWIG INDUSTRIAL SCHOOL FOR GIRLS, 7135 No. Harlem Avenue, Niles, Illinois.

One-third (⅓) thereof to the POLISH MANUAL TRAINING SCHOOL FOR BOYS, 7135 No. Harlem Avenue, Niles, Illinois.

(E) If in the sole judgment of the Trustees, the income payable to my son, OSCAR J. BREAULT shall at any time be, in their judgment insufficient to provide for any unusual expense caused by illness, operation, or other physical incapacity, or to provide for proper support, then the Trustees are authorized to apply for such purposes, such sum or sums from the principal of the Trust Estate as in their judgment appears to be necessary.

(F) All payments of income or distribution of principal to OSCAR J. BREAULT hereunder, shall be made to said OSCAR J. BREAULT in person, or upon his personal receipts, and not be liable or taken for any obligation of said beneficiary, including alimony.

(G) At any time after three years of administration of this Trust, the Trustees named herein or their successors, feel that my said son, OSCAR J. BREAULT, has become competent to personally handle the corpus of this Trust, the aforesaid Trustees are hereby given the power to terminate this Trust and to deliver to my said son, the entire corpus of this, my Trust."

The charities named in Article TENTH (D) are defendants here but were not made defendants in No. 60 C 1060.

Oscar's will provides, inter alia, as follows:

"THIRD: I give, devise and bequeath all the rest, residue and remainder of my property, of whatsoever character and wheresoever situate, be it real, personal or mixed, belonging to me at the time of my death, or over which I have power of disposition: to HAROLD L. FEIGENHOLTZ, of Chicago, Illinois, and to his successor or successors as Trustee for and upon the following Trusts, purposes and conditions, to-wit:

\* \* \* \* \* \*

"FIFTH: In case of illness or any emergency of any beneficiary hereunder, the Trustee in his sole discretion as to what constitutes emergency, may use any additional funds out of the income or principal as will be necessary to take care of the emergency.

"SIXTH: Payments to all beneficiaries of the trust estate, excepting minors and persons under disability, shall be made to such beneficiaries in person or upon their personal receipt, and to no one else, and no interest of any beneficiary shall be assignable in anticipation of payment or be liable in any way for such beneficiaries' debts or obligations.

\* \* \* \* \* \*

"EIGHTH: In the event of any suit, directly or indirectly instituted by any beneficiary or beneficiaries hereunder against the Trustee to construe this trust or to terminate this trust, the cost, expenses and charges in connection with the said litigation shall be paid by the said beneficiary or beneficiaries and be deducted from said beneficiary or beneficiaries' distributive share.

\* \* \* \* \* \*

"TENTH: (a) Commencing from the date of my death the Trustee shall distribute the net income from the Trust Estate to my wife, ESTELLE ANGELA BREAULT in convenient installments not less frequently than quarter-annually for and during her lifetime.

(b) If at any time in the opinion of the Trustee the income from this trust

is insufficient to meet any unusual expenses caused by illness, accident, or other unexpected misfortune, or to provide for her comfortable maintenance and welfare, the Trustee may pay to my wife such amounts from the principal as he deems necessary for such purposes, and the judgment of the Trustee as to the propriety and amount of any such payment shall be conclusive.

(c) Upon the death of my wife the Trustee shall distribute the net income from the Trust Estate to my beloved children, KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT, in equal installments not less frequently than quarter-annually up to the time that the youngest of my surviving children shall have attained the age of forty (40) years.

(d) At the date that the youngest of my surviving children shall have attained the age of forty (40) years, the Trustee shall distribute the remaining principal of the Trust as follows:

1. To my beloved child, KENNETH BREAULT, five per cent (5%) of my Trust Estate.

2. To my beloved child, WILLIAM JOSEPH BREAULT, five per cent (5%) of my Trust Estate.

3. To my beloved child, BONNIE CATHERINE BREAULT, five per cent (5%) of my Trust Estate.

4. To the WESLEY MEMORIAL HOSPITAL, an eleemosynary institution, eighty-five per cent (85%) of my Trust Estate.

(e) In the event one of my beloved children predeceases me, or dies prior to the distribution of the principal of the Trust Estate, then and in that event his or her portion of the income or principal of the Trust Estate shall be then divided among my remaining children.

(f) In the event all of my beloved children shall die prior to the age of forty (40) years, this Trust shall terminate and the entire principal and accumulations of the Trust shall be forthwith distributed to the WESLEY MEMORIAL HOSPITAL, an eleemosynary institution.

(g) I hereby direct and provide that no part of the corpus of said Trust Estate hereinbefore created for the benefit of my three children, KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT, shall ever be liable in any way for any debts that my said three children, KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT, may at any time contract, or for any debts that they may have contracted, and shall never be liable for any other claim of any kind against them.

(h) If at any time, for the proper support and maintenance of my said three children, KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT, or for any other purpose deemed expedient to my said Trustee, it shall be advisable to pay unto said three children, KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT, any sums greater than the annual net income derived from my said Estate so held for the benefit of my said three children, KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT, then I direct my said Trustee to pay such sums as he may deem advisable unto said three children, KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT, and in order to raise additional sums, I direct and empower my said Trustee, in his discretion, to mortgage, pledge, or sell any portion of the said Trust Estate for his benefit, if such action seems necessary, and his decision shall be conclusive.

(i) If, in the sole judgment of the Trustee, the income payable to my three children, KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT, shall at any time be in his judgment insufficient to provide for any unusual expense caused by illness, operation, or other physical

incapacity, or to provide for proper support, then the Trustee is authorized to apply for such purposes such sum or sums from the principal of the Trust Estate as in his judgment appears to be necessary, and his decision shall be conclusive.

(j) All payments of income or distribution of principal to KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT hereunder shall be made to said KENNETH BREAULT, WILLIAM JOSEPH BREAULT and BONNIE CATHERINE BREAULT in person, or upon their personal receipts, and not be liable or taken for any obligation of said beneficiary, including alimony.

"*ELEVENTH:* In the event of any suit, directly or indirectly, instituted by any beneficiary or beneficiaries hereunder against the Executor to construe the Will, or to terminate the Will, or to have the Will declared invalid, the cost, expense and charges in connection with said litigation shall be paid by the said beneficiary or beneficiaries and shall be deducted from the said beneficiary's or beneficiaries' share."

The Estelle Angela Breault who is given a life interest in income under Article TENTH (a) of Oscar's will was Oscar's third wife. She was born on August 20, 1909. The Kenneth Breault named in Article TENTH (d) is a son of Oscar by his first wife, Ann. Kenneth was born on November 3, 1937. Both are defendants here as well as in No. 60 C 1060 and neither seeks to set aside Oscar's will. The William Joseph Breault and the Bonnie Catherine Breault, named also in Article TENTH (d), are the plaintiffs here and in No. 60 C 1060. William was born on February 23, 1944 and Bonnie (whose actual name is Bonnie Jo Ellen Kathryn Breault) was born on August 25, 1945. The Wesley Memorial Hospital referred to in Article TENTH (d) is a defendant in this case and also in No. 60 C 1060. The plaintiffs are citizens of Kentucky and all of the defendants, including the defendants Irma Meyers and Eugene Busch, who have no interest in the outcome of this suit, are citizens of Illinois. Complete diversity of citizenship therefore exists and the amount in controversy in this case exceeds $10,000 exclusive of interest and costs.

The contentions of the plaintiffs may be stated in substance as follows:

(1) Even if Oscar's will was not procured by undue influence, his purported exercise of the power of appointment conferred upon him by his mother's will was void because: (a) it is possible that the future interests which Oscar purported to create may never vest, and (b) the future interests which Oscar purported to create violate the rule against perpetuities.

(2) Assuming that Oscar's will was procured by undue influence, the three charities named as alternative takers under Kathryn's will can take nothing because: (a) the order admitting Oscar's will to probate extinguished the interests of the charities and their failure to appeal from that order or to bring suit within the time allowed by law to contest Oscar's will should prevent them from now claiming the benefit of any declaration that Oscar's will is invalid, and (b) Kathryn's alternative gift to the three charities violates the rule against perpetuities.

(3) The defendants Estelle Breault and Kenneth Breault have disclaimed any interest in the estates of Oscar and Kathryn Breault except as beneficiaries under Oscar's will.

(4) The defendant Feigenholtz, as executor of Oscar's will, accordingly will hold Oscar's estate upon a resulting trust for the benefit of the plaintiffs if Oscar's will is determined to have been procured by undue influence and the defendants Feigenholtz and Dahm hold Kathryn's estate upon a resulting trust for the benefit of the plaintiffs except that the defendant Kenneth Breault is equitably entitled to an interest in that estate equal to what he had a reasonable expectation of receiving "under the trust in the Oscar J. Breault Will, if such trust were

valid." To the extent that it is necessary to pass upon these contentions to arrive at a decision, they will be treated in the order set out immediately above.

■ *The contention that Oscar's exercise of the power is void because of uncertainty:* Oscar's will, after giving his wife Estelle an equitable life estate, provides that the principal of the trust estate shall be distributed when "the youngest of my surviving children shall have attained the age of forty (40) years," or in the event that "all of my beloved children shall die prior to the age of forty (40) years * * *." The plaintiffs urge that the trust created by Oscar's will should fail because there is no express provision for termination of the trust in case one or more children should reach 40 and one or more should fail to attain that age. However, the reference to "surviving children" almost surely means that the trust is to terminate when all of the children in being for the time being have reached 40, assuming of course that Estelle is dead. Cf. Sheridan v. Blume, 290 Ill. 508, 514, 125 N.E. 353. Even if this were not so the trust would not fail for uncertainty any more than did the trust construed in Cazel v. Cazel, 22 Ill.2d 339, 175 N.E.2d 403, which contained provisions strikingly similar to those before the court here.

■■ The plaintiffs also urge that no provision is made as to what shall happen to the trust property if one or more children should reach 40, but if all should die before the youngest reaches that age. This, they say, creates a perpetuity because the interests in corpus might never vest and Feigenholtz could continue to hold the trust estate indefinitely. But the rule against perpetuities has never been concerned with whether interests might never vest; it is concerned with whether an interest must vest, *if at all*, within the prescribed period. Thus the rule against perpetuities is not offended because no provision is expressly made for an event which may never happen. Nor is it necessary or appropriate to decide now what should be done if that event

in fact occurs. The trust property might go to Wesley Memorial Hospital or it might result back to Kathryn's estate, but that question is not before the court. If all the children outlive Estelle and if all reach 40, the property will be distributed as Oscar's will (assuming it is valid) provides and the fact that all conceivable happenings are not anticipated is no ground for declaring it to be invalid.

■ *The contention that Oscar's exercise of the power of appointment violates the rule against perpetuities:* Apart from the question of uncertainty, the plaintiffs contend that Oscar's appointment violates the rule against perpetuities because the interests which it purports to create are not certain to vest, if at all, within 21 years after some life in being at the death of Kathryn, the donor of the power. The plaintiffs correctly state the law to be that, in determining the validity of the exercise of a testamentary power of appointment under the rule, the provisions made by the donee must be read back into the instrument creating the power and the period of the rule begins to run from the date that the power was created, in this case Kathryn's death. Northern Trust Co. v. Porter, 368 Ill. 256, 13 N.E.2d 487. This rule is subject to the modification that, although we read the exercise of the power back into the original instrument, we may consider events that have actually happened up to the time when the power is exercised (in this case Oscar's death) in passing upon the validity of the provisions made by the donee of the power. Wilkinson v. Duncan, 30 Beav.111, 54 Eng.Reprint 831; Re Leigh's Settlement Trusts, (1938) Ch. 39. Thus, in testing Oscar's appointment we may consider which of the beneficiaries of it were in fact in being, when Kathryn died in 1952.

As already observed, Oscar's will gives his widow a life estate, followed by income gifts to his "beloved children," Kenneth, William and Bonnie until "the youngest of my surviving children shall have attained the age of forty (40) years." When that event has occurred the principal is to be distributed in pro-

558

portions of 5% apiece to each of the three named children and the other 85% is to go to Wesley Memorial Hospital. If any of Oscar's "beloved children" predeceases him "or dies prior to the distribution of the principal of the Trust Estate," his or her portion "of the income or principal of the Trust Estate shall be then divided among my remaining children." If all of Oscar's "beloved children" die before reaching 40, Wesley Memorial Hospital gets the entire principal. Kenneth, William and Bonnie were all in being at the death of Kathryn, the donor of Oscar's power. It is therefore obvious that the rule against perpetuities cannot be violated by any of the foregoing provisions even if all of the future interests created are contingent unless children of Oscar unborn at Kathryn's death are objects of the appointment. For if only the named children are included, every interest must vest, if at all, within the lives of or at the death of the last to die of persons who were in being when the power was created.

▆ Plaintiffs urge that Oscar had in view the possibility that other children might be born to him. They admit that the words "my beloved children" necessarily refer to the children named, but they say that the gift over to "my remaining children" upon the death of a "beloved" child prior to distribution comprehends a possible posthumous child, especially because the deceased child's portion of income and principal is to be divided *among* the remaining children instead of *between* them as would be the case if only two of the three named were contemplated. Plaintiffs also argue that the provision for distribution "at the date that the youngest of my *surviving* children" reaches 40 refers not to the youngest surviving of the children named, but to the youngest of any children who might be born. Apart from the difficulty inherent in reading the references to "remaining" and "surviving" children as comprehending children other than Kenneth, William and Bonnie, the plaintiffs' argument must fail because it overlooks the fact that no other child of Oscar's

was in fact born or conceived at the time of his death. Since the so-called "second look" doctrine, as applied to the exercise of powers of appointment, permits us to look at events as they actually were when Oscar died, we are permitted to consider that there was no additional child of Oscar's, born or posthumous, who could affect the gifts made by Oscar in the exercise of his power, however these may be construed. Oscar's purported exercise of his power of appointment is valid so far as the rule against perpetuities is concerned.

*The contention that the order admitting Oscar's will to probate extinguished the gifts to the charities contained in Kathryn's will:* Kathryn's will, quoted at length above, provides that at Oscar's death the Trust Estate is to be distributed "according to the provisions of * * * (his will), and if he shall fail to execute a Will, or if such Will shall not be admitted to probate," the Trust Estate is to go in equal shares to three named charities. Plaintiffs say that since Oscar did in fact execute a document purporting to be a will, and since that document was admitted to probate, the charities cannot take even though plaintiffs may later prevail in their suit to set aside Oscar's will. If, upon the happening of that event, the charities could take, the plaintiffs obviously have no interest in Kathryn's estate.

Plaintiffs' argument is bottomed upon a literal construction of the language of Kathryn's will and, if the language is literally construed, it must be admitted that the events upon which the charities were to take, *i. e.,* the non-execution of a will by Oscar or the non-admission of "such will" to probate, can now never occur. The plaintiffs' position is that by "Will" the testatrix did not mean a "valid will," and that the setting aside of Oscar's will cannot be equated with its not being admitted to probate. Plaintiffs urge that either of such interpretations would be the equivalent of "implying a contingency," which the authorities say is not permissible. It is true that in cases involving the rule against perpetu-

ities the implication of contingencies has not been favored. Thus, where property was given to the first or other son of the testatrix's grandson who should be bred a clergyman and in case the grandson should have no such son then to X, the gift over to X violated the rule against perpetuities and the court refused to hold that X could take even though the grandson died without ever having any son at all. In other words, the contingency that X could take if the grandson died without ever having had a son was not expressed and it would not be implied. Protor v. The Bishop of Bath and Wells, 2 H.Bl. 358, 126 Eng.Reprint 594. Cf. Easton v. Hall, 323 Ill. 397; Miles v. Harford, 12 Ch.Div. 691; Re Bence, (1891) 3 Ch. 242; Re Hancock, (1901) 1 Ch. 482, (1902) A.C. 14. However, it is one thing to imply a contingency for the purpose of saving a gift from the application of a rule of strong public policy, such as the rule against perpetuities; it is a very different thing to reject a highly literal interpretation of language when a contrary intention is clearly inferable.

In the instant case, Kathryn's intention that the charities should take if Oscar failed to exercise his power of appointment for any reason is plainly inferable—despite the ill-chosen words used to express that intent—from her failure to make a gift in default of appointment (or indeed any gift at all) in favor of her grandchildren who would normally be the natural objects of her bounty after Oscar's death. Had she wanted the grandchildren to take (except to the extent that Oscar chose to give them something), a gift in default in their favor would have accomplished her purpose. Instead, she named the charities. It is therefore clear that the gift over to the charities should be read as one to take effect if Oscar left a valid will and the mere execution of a document purporting to be a will and its subsequent admission to probate ought not to extinguish the interests of the charities if it is later shown that the execution of the document was procured through fraud or undue influence. This conclusion is supported by cases which hold that where there is a gift over of property upon the death of a person "intestate," the word "intestate" is not to be read literally, and the gift over may take effect if that person fails to dispose of the particular property even though he leaves a will. Bundy v. United States Trust Co., 257 Mass. 72, 153 N.E. 337; Bradford v. Leake, 124 Tenn. 312, 137 S.W. 96. And cf. Tolman v. Reeve, 393 Ill. 272, 291, 65 N.E.2d 815; Glaser v. Chicago Title & Trust Co., 393 Ill. 447, 466, 66 N.E.2d 410; Edwards v. Beard, 77 Ind.App. 478, 134 N.E. 203; Medina County Nat. Bank v. Foreman, 27 Ohio App. 400, 161 N.E. 366.

Plaintiffs further argue that even if the admission of Oscar's will to probate did not extinguish the interests of the charities, their failure to appeal from the order admitting the will to probate and to bring a suit to contest the will within the time permitted by Illinois law in effect constitutes a waiver of their rights under Kathryn's will. In this view, if a testator left all of his property to a stranger, and if one of two heirs successfully contested his will and the other refused to join in the contest and was defaulted as a defendant, the defaulting heir could take nothing. No Illinois decision has been brought to the court's attention which indicates that a probate proceeding may be thus fragmented, though it does seem that an heir who refuses to contribute to a will contest should perhaps not be permitted to sit idly by and reap the benefits of another's efforts, expenditures and ultimate success. Here, however, the plaintiffs did not see fit to make the charities defendants in No. 60 C 1060 and it may be assumed that they were not necessary parties. Cf. Freasman v. Smith, 379 Ill. 79, 39 N.E.2d 367. It would be placing an undue burden on the charities, which are represented in any event by the trustees (American Bible Society v. Price, 115 Ill. 623, 5 N.E. 126), to hold that they were under a duty to appeal from an order admitting a will to probate or to bring suit to contest a will of which they may have had no timely notice.

The charities' rights have not been thus extinguished.

*The contention that Kathryn's alternative gift to the three charities violates the rule against perpetuities:* What might be considered plaintiffs' major contention is based on the theory that Kathryn's attempted gift over to the three charities violates the rule against perpetuities. The violation occurs, it is argued, because the gift over, assuming that it is conditioned on Oscar's execution of a *valid* will or the non-admission of his "will" to probate, is contingent upon the happening of one of two events, *i. e.*, the failure of the will to be admitted to probate or the determination of its invalidity, either of which could conceivably occur more than 21 years after the expiration of some life in being at Kathryn's death. Since the rule against perpetuities is pessimistically concerned with the worst that might happen, the unlikelihood that the period of the rule will expire before the event upon which the gift over is to occur cannot, so it is argued, be taken into account. In this connection plaintiffs cite Johnson v. Preston, 226 Ill. 447, 80 N.E. 1001, 10 L.R.A., N.S., 564, where a gift in trust conditioned, as the court construed it, on the probate of a will, and Ryan v. Beshk, 339 Ill. 45, 170 N.E. 699, where contingent substitutionary gifts in favor of the executors of certain named persons were likewise held bad because the executors might not be appointed within the limits of time. The plaintiffs would distinguish from the instant case such cases as Harvard College, etc. v. Balch, 171 Ill. 275, 49 N.E. 543, and other Illinois cases, holding that gifts in default of appointment, not otherwise contingent, are not rendered contingent merely because they are to take effect only on the non-exercise of the power. The gifts over to the charities, the plaintiffs say, are contingent not merely on Oscar's failure to exercise his power, but upon the express condition that his will shall not be admitted to probate. Furthermore, it is argued that the spendthrift provisions in Oscar's will require that

distributions of income and principal shall be made to the beneficiaries in person or upon their personal receipt and that these provisions in and of themselves cause the charitable gifts to be contingent. Cf. Routt v. Newman, 253 Ill. 185, 97 N.E. 208; Cowdery v. Northern Trust Co., 321 Ill.App. 243, 53 N.E. 2d 43.

The defendant Feighenholtz argues on the other hand (1) that the gifts over to the charities are simply gifts in default of appointment and as such should be subject to the usual rule that such gifts are vested to be divested by Oscar's exercise of the power of appointment; (2) that the spendthrift provisions should have no effect upon the vesting of the gift to the charities (cf. Costello v. Warnisher, 4 Ill.App.2d 571, 124 N.E.2d 542); and finally (3) that the provisions of Ill.Rev.Stat., c. 30, Par. 153a preclude a holding that these gifts are not vested. That section provides that the vesting of any limitation of property "shall not be regarded as deferred for purposes of the rule against perpetuities merely because the limitation is made to the estate of a person or to a personal representative, or to a trustee under a will, or to take effect on the probate of a will." Of course, if the interests of the charities are vested within the meaning of the rule against perpetuities, the rule is not offended.

█ Balancing the conflicting positions of the parties, it is difficult to reach the conclusion that the gifts to the charities are contingent in a perpetuity sense. *First*, it is to be noted that the gift which was held "vested" in Harvard College, etc. v. Balch, 171 Ill. 275, 49 N.E. 543, was introduced by the words "if he shall not have disposed of the same by will, * * *." language importing contingency in little, if any, lesser degree than that contained in Kathryn's will. *Second,* if the language in Kathryn's will creates gifts which are contingent within the meaning of the rule against perpetuities, then every gift "in default of appointment" ought to be held bad, since there is a "default of

appointment" under a testamentary power in every case where the donee fails to make a will, where his will is denied probate or where, having been admitted to probate, it is later set aside. *Third*, quite apart from doubts as to the applicability of the spendthrift provisions to the charitable gifts over, there would appear to be grave doubt that a so-called "personal receipt" clause should be allowed the effect of invalidating an otherwise valid gift to charity. See Costello v. Warnisher, 4 Ill.App.2d 571, 585, 124 N.E.2d 542. And compare La Salle National Bank v. Mac Donald, 2 Ill.2d 581, 119 N.E.2d 266, 46 A.L.R.2d 901; De Korwin v. First Nat. Bank of Chicago, 7 Cir., 275 F.2d 755, 759–760. Even in Easton v. Hall, 323 Ill. 397, 154 N.E. 216, where a charitable gift was held too remote, the result did not flow from the spendthrift provisions. Id. at 417—420, 154 N.E. 216. *Fourth*, the statutory provisions quoted above (Ill.Rev.Stat., c. 30, Par. 153a), while designed primarily to validate powers of appointment exercisable in favor of the "estate" of a spouse-beneficiary of a marital trust, and while not literally applicable here, strongly indicate a legislative aversion to the highly technical applications of the rule against perpetuities exemplified by Johnson v. Preston, 226 Ill. 447, 80 N.E. 1001, and Ryan v. Beshk, 339 Ill. 45, 170 N.E. 699. *Finally*, in view of the tendency of courts to apply the rule against perpetuities less stringently than in the past (cf. Wong v. Di Grazia, 60 Cal.2d 525, 35 Cal.Rptr. 241, 386 P.2d 817), the holding of these charitable gifts to be "contingent" in order to permit a formalistic application of the rule would be unsuitable.

█ But there is another reason why the gifts here should not be regarded as violating the rule even if they are to be considered "contingent." In Monarski v. Greb, 407 Ill. 281, 95 N.E.2d 433, following gifts to enemy aliens, there was a provision that if the bequests "cannot be paid to them * * * said bequests be held for them for * * * three years after the Armistice of War II * * * and if the said persons or their children are not located or able to be paid said bequests personally * * * " the bequests were to go to trustees to be held for charitable purposes. The alien property custodian argued that the charitable gift over violated the rule against perpetuities, because the ending of the war might not occur within the period of the rule against perpetuities. The court affirmed the lower court's decree which found that the testator "selected as the date of the conditional limitation, an event (the armistice) then certain to all sane persons to occur well within, and prior to any possible expiration of, the period limited by the Rule against perpetuities." The *Monarski* case cannot be reconciled with Johnson v. Preston, 226 Ill. 447, 80 N.E. 1001, or Ryan v. Beshk, 339 Ill. 45, 170 N.E. 699, and must be interpreted as rejecting those decisions. In the instant case it is "certain to all sane persons" that a final determination that Oscar's will is valid or invalid will occur well within the period of the rule and this was equally certain when Kathryn died and when Oscar died. Accordingly the gifts to the charities do not violate the rule against perpetuities.

In view of the foregoing, the gifts over to the charities will take effect if Oscar's will should be found to have been procured through fraud or undue influence and the plaintiffs have no interest in the trust created by their grandmother's will. This conclusion makes is unnecessary to consider plaintiffs' third and fourth contentions concerning disclaimer by Estelle and Kenneth Breault and the resulting trusts upon which the defendants Feigenholtz and Dahm are alleged to hold the property in question.

This memorandum may be treated as embodying the court's findings of fact and conclusions of law and an order of judgment dismissing both counts of the Amended Complaint may be submitted.